**People of the State of Illinois, Plaintiff-Appellee, v. James Lee Ervine, Defendant-Appellant.**

**Gen. No. 49,841.**

First District, Fourth Division.

September 24, 1965.

Rehearing denied October 20, 1965.

Marshall Patner and Roy Hofer, both of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Matthew J. Moran, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

The indictment charges defendant with robbery (Count I) and aggravated battery (Count II).[1] Ill Rev Stats

[1] Trial court indictment number 63–1578. The record includes a notice of motion for the furnishing of free transcripts of proceedings in indictments 63–1578, 63–1579 and 63–1580. We are without further information as to the latter two indictments, however, and only the first mentioned is involved in this appeal.

(1961), ch 38, §§ 18–1 and 12–4. After a bench trial defendant was found guilty on both counts and was sentenced to the penitentiary for seven to ten years. Defendant appeals on the grounds that the State failed to prove his identification beyond a reasonable doubt; and that the court admitted expert testimony which was incompetent, or, in any event, was outweighed by expert testimony on defendant's behalf. On the basis of these grounds defendant seeks a reversal. In the alternative he asks for a new trial because of the court's refusal to grant certain discovery requested by defendant during the trial.

The evidence relating to the occurrence of the crimes is not in dispute. On May 24, 1963 Mabel Gaskell was walking on North Shore Avenue at about 5:45 a. m. on her way to work. It was daylight. A man walking in the opposite direction on the same sidewalk was approaching her. As he passed he grabbed her across the mouth with his left hand and threw her to the ground. He said, "If you scream, I'll kill you." Mrs. Gaskell was on her back on the sidewalk in a position to see the man, and did watch him as he bent over her in working with his right hand to free her purse from her arm. The shoulder-type purse contained money, cigarettes, keys, etc. The man managed to get possession of her shoulder bag, stomped on her face, and ran away. She screamed for help.

Ben Levitsky heard the scream as he was sitting at breakfast in his kitchen. He went to the back porch of his second-floor apartment. There he saw a man run through a gangway to the alley. He stopped at the gate, looked up the alley in both directions and, while doing so, stuffed something under his jacket. Then he ran across the alley and through another gangway where he got into the driver's seat of a blue car and drove away.

The police were called and they and Levitsky arrived at the scene within a few minutes. Mrs. Gaskell related

the occurrence to the police; said she had been robbed of $40 to $45; and gave a description of her assailant. The police were also given a description of the automobile Levitsky had seen.

At 6:45 a. m. defendant was arrested in his 1954 blue Chevrolet. He was searched, and $47 was found on his person. He had a red smear on the palm of his left hand. Later that morning, in a lineup of three men, Mrs. Gaskell identified defendant as her robber. She made a similar positive identification at the trial. Defendant did not take the stand, but his wife testified that he left home that morning at about 5:30 a. m. After judgment of guilty, at a presentence hearing on matters in mitigation and aggravation, it was disclosed that defendant had five previous felony convictions.

As will be explained later in this opinion, the only essential point to be considered is defendant's argument that the proof of defendant's identification as the robber was not established beyond a reasonable doubt.

Levitsky testified that he saw the running man only from the back and did not see his face. He described his hair as black, straight, long and slick.

Mrs. Gaskell testified that at the scene of the crime she told officer Walsh that her robber had "black, straight, long hair." She also testified that his hair was long when she saw him in the lineup. However, when she was shown a police picture of defendant, taken at the station after his arrest but before the lineup, she said it showed him to have shorter hair than on the two occasions when she had seen him that day. She also said that in the picture defendant's hair was "combed different"; that at the time of the robbery "it was up in a pompadour and a heavy bush."

Officer Walsh testified that at the scene Mrs. Gaskell had told him that her assailant had "sort of an odd accent, other than Chicago." He said further, "We couldn't pin down what type it was." He, therefore, noted in his

report that the offender "had a foreign voice." At the trial Mrs. Gaskell denied having said that the robber had a "foreign voice." She testified that when he had said to her, "If you scream I'll kill you" (the only time she heard him talk) he spoke with approximately the same accent as she did. Since, as has been mentioned, defendant did not testify, it was not established at the trial whether defendant did or did not have a strange accent. Under that circumstance, the point raised by defendant· as bearing on the question of identification does not, in fact, do so. It bears only upon the credibility of Mrs. Gaskell as a witness.

Further on the matter of identification, both Levitsky and Mrs. Gaskell had given to the police descriptions of the robber's clothing (light jacket, dark trousers) which accurately described the clothes defendant was wearing when arrested. The description given to the police also included: height, 5′ 8″; age, 19 to 25 years; weight, 145 pounds; automobile, old and blue. As to each of these matters the description was also borne out in fact.

Evidence was also introduced by State witnesses to show that three samples of the red smear taken from defendant's left palm and one from Mrs. Gaskell's lipstick were tested in the Police Department Crime Laboratory. The State's expert witness testified without objection that in his opinion all four samples were lipstick, and that they were all similar in physical properties and in color.[2] On cross-examination the witness conceded that the physical appearance, waxy nature, and brilliant color (produced by eosin dyes) of the substances could have been present in materials other than lipstick. He

---

[2] Objection was made that there was a mixup between the two State's witnesses (the one who took the samples and the one who made the tests) as to which of two samples taken from defendant had been on a dry swab and which on an alcohol swab. Since the test results were the same as to both, we consider this objection to have been inconsequential.

also conceded that there could be many brands of lipstick with properties which would test similar to the scrapings from defendant's hand. These concessions, however, do not, in our opinion, weaken substantially the evidence that the red smear on defendant's palm could have been acquired while holding his hand over Mrs. Gaskell's mouth in the course of the robbery. This would have been consistent with her description of the crime.

An interesting parallel may be found in the minimum of specificity required in the admissibility of testimony identifying a gun as the one used in a robbery. For example, in People v. Pittman, 28 Ill2d 100, 103, 190 NE2d 802 the court said:

> The complaining witness testified that the gun offered in evidence looked like the "silvery object" which one of the robbers pointed at him and one of the arresting officers identified the gun as the one he picked up at the time defendants were arrested. This was sufficient to connect the gun with the defendants and with the crime and to make it admissible in evidence.

 It should be remembered that all the items which we have discussed in regard to identification are matters which are collateral to the fact of Mrs. Gaskell's positive identification of defendant. Most of these matters were in corroboration; her description of his hair was not. But it is contrary to human experience to make an identification by noticing first the separate features, hair, or clothes of a person, and then, somehow, running off a total to determine recognition or non-recognition. Ordinarily all features are viewed at once and the recognition made instantaneously or not at all. This is one of the reasons why minor discrepancies in identification do not require reversal. People v. Boney, 28 Ill2d 505, 509, 192 NE2d 920; People v. Prochut, 27 Ill2d 298, 300, 189 NE2d 290. The essentials were present in the victim's

87

opportunity to observe, and her positive identification, the sufficiency of the recognition being a question of fact for the trial court. People v. Reed, 27 Ill2d 342, 343, 189 NE2d 253; People v. Washington, 26 Ill2d 207, 210, 186 NE2d 259. In this case the conscientious trial judge made the following statement at a hearing on the motion for new trial:

> She may be uncertain as to his voice and uncertain as to the look of his hair but there still would be no uncertainty about her identification. I heard the entire record and I went into it very carefully, and I think there is no doubt at all but what this man was properly identified.

We cannot say that the State's proof was so unsatisfactory as to justify a reasonable doubt of guilt or to require a reversal of the trial court's conclusion. People v. Means, 27 Ill2d 11, 17, 18, 187 NE2d 679.

Defendant's second ground for reversal is that the court admitted incompetent testimony of the State's chemist who testified as an expert in regard to the lipstick smear. There are two answers to this contention, both valid in our opinion.

■ First, the point was not made in defendant's written motion for a new trial filed in the trial court. It was thus waived and is not available to defendant upon review. People v. Irwin, 32 Ill2d 441, 443, 444, 207 NE2d 76; People v. Touhy, 31 Ill2d 236, 240; People v. Greer, 30 Ill2d 415, 417, 197 NE2d 22. Defendant says that this salutary rule does not apply here because defendant's counsel had been appointed by the court and there can be no waiver by appointed counsel, citing People v. Dean, 31 Ill2d 214, 218, 201 NE2d 405. We think defendant misreads the Dean case. In our opinion that case involves the question of whether appointed counsel was so incompetent as to impinge upon defendant's right to legal representation. The court said:

An accused is entitled to a fair trial, which includes competent representation. This does not mean, however, an accused is denied competent counsel because his court appointed counsel chooses a course of action which in retrospect proves to be less desirable than an alternate, nor even because he errs. Incompetency of counsel such as to constitute denial of an accused's right to counsel is conduct of such defective character as to make the defense a farce (People v. Reeves, 412 Ill 555); substantial prejudice must be visited on defendant because of the alleged errors of court-appointed counsel. (People v. Morris, 3 Ill2d 437).

We do not believe that defendant was prejudiced at all by the waiver of this point, nor do we believe that it is a plain error which can be reviewed without preservation in the record. People v. Fleming, 54 Ill App2d 457, 460–462, 203 NE2d 716. Furthermore, this court takes notice of the fact that defendant's attorney, far from being incompetent, is one of the abler practitioners in this area.

■■ Secondly, we have examined the record on this point, anyway, and find that the State's expert witness was competent to testify as he did. As to whether his qualifications and opinions should be considered as outweighed by those of defendant's expert witness, those are matters left to the trier of facts.

Finally, defendant contends that the court erred in not granting him discovery as to certain grand jury testimony and a copy of a police teletype message allegedly broadcast over the radio as the basis on which defendant was arrested.

■ The reason given to the judge for wanting to see the grand jury testimony of Mrs. Gaskell was to impeach her in regard to her description of her assailant's hair and voice. By questioning on an offer of proof, however, the witness testified that she had not told the grand jury anything about the man's voice, and that she had

told the grand jury that his hair was black and slick. It was then stipulated by the State's Attorney that the answers given in the offer of proof might be considered as in evidence, and the judge so ordered. Defendant's counsel thereupon stated, "All right."

█ As to the teletype message, the State's Attorney informed the court that, in response to defendant's subpoena duces tecum, the police had made a search and found "there was no teletype message sent on this case." Whereupon defendant's attorney said, "All right. Thank you very much."

Under the circumstances, it is our conclusion that defendant was not prejudiced in either of these instances, and that the court, in fact, did not commit error in regard thereto. Furthermore, neither contention was mentioned in the written motion for new trial.

The judgment and sentence of the Criminal Court are affirmed.

Affirmed.

McCORMICK, P. J. and DRUCKER, J., concur.