THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHNNIE BROWN, Defendant-Appellant.

First District (4th Division)   No. 81—2501

Opinion filed December 9, 1982.

Thomas F. Geraghty and Corlis Chang, both of Northwestern University Legal Clinic, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Raymond Brogan, and Rhoda W. Davis, of counsel), for the People.

JUSTICE LINN delivered the opinion of the court:

Following a bench trial in the circuit court of Cook County, defendant, Johnnie Brown, was convicted of armed robbery (Ill. Rev. Stat. 1979, ch. 38, par. 18—2) and sentenced to six years in the Illinois Department of Corrections. On appeal, defendant claims that (1) the State failed to prove him guilty beyond a reasonable doubt, (2) the trial court erred in admitting the identification testimony of two witnesses to a subsequent crime, and (3) the trial court erred in denying defendant's motion to suppress identification. We affirm defendant's conviction.

On February 21, 1980, at about 11:20 p.m., Major Barrow, the complaining witness, was struck on the head from behind as he was entering his parked car. Two men threatened him with guns, took his wallet and money, and then drove off in his car. Barrow immediately called the police and gave them a description.

Approximately 40 minutes later, two men in a car, later identified as the car stolen from Barrow, collided with the back of another car occupied by two women, Maxine and Diane Griffin. The two men,

both of whom were wearing ski masks, left the stolen car and entered the women's car; subsequently, both men removed their masks. Two days later, defendant was arrested, placed in a lineup, and positively identified by both Barrow and the Griffins.

On July 28, 1981, defendant's motion to suppress his identification on grounds of unreliability was heard and denied, and trial began immediately thereafter. The State presented its case in chief through the testimony of Major Barrow, the complaining witness. Maxine and Diane Griffin then testified to the corroborating identification of defendant as the driver of the stolen car, and a police department investigator outlined the procedures followed at the challenged lineup.

In response, defendant presented his alibi defense through his own testimony and that of his girlfriend, his sister, and his sister's common law husband. Last, the defense presented the testimony of the professional psychologist who had testified at the suppression hearing as an expert on memory and alleged that the lineup procedures were improperly suggestive. Following all the testimony and final arguments, the trial court found defendant guilty of armed robbery. Defendant's motion for a new trial was denied, and he was sentenced to a term of six years in the Illinois Department of Corrections.

OPINION

I

On appeal, defendant first argues that the State failed to prove him guilty beyond a reasonable doubt because Barrow's identification testimony, the primary evidence of defendant's guilt, was too unreliable to support a conviction. Defendant claims that the inaccuracy of the description Barrow gave the police immediately after the robbery is proof that Barrow did not have an adequate opportunity to observe any identifying characteristics of his assailant. Upon examining Barrow's testimony concerning the robbery and the subsequent lineup, we find his identification to be sufficiently reliable to support defendant's conviction.

Defendant agrees that where the identity of the accused is at issue, the testimony of a single witness is sufficient to convict, even if the identification testimony is contradicted by the accused, as long as the witness is credible and the accused is viewed under circumstances which would permit a positive identification to be made. (*People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.) However, while nei-

ther perfect conditions nor a prolonged period to observe are necessary (*People v. Porter* (1975), 29 Ill. App. 3d 456, 330 N.E.2d 599), the witness must have had an adequate opportunity to view the alleged offender at the time of the occurrence. (*People v. Mays* (1976), 38 Ill. App. 3d 182, 347 N.E.2d 235.) Defendant maintains that Barrow had no such opportunity.

The test of a positive identification is whether the witness was close enough to the accused for a sufficient length of time under conditions adequate for observation. (*People v. Thomas* (1979), 72 Ill. App. 3d 186, 389 N.E.2d 1330.) If the identification is reliable in light of the totality of the circumstances (*Stovall v. Denno* (1967), 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967), its admission will be upheld. In *Neil v. Biggers* (1972), 409 U.S. 188, 34 L. Ed. 2d 401, 93 S. Ct. 375, the Supreme Court further refined the test for a reliable identification by isolating five separate factors: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated by the witness at the identification confrontation, and (5) the length of time between the crime and the confrontation.

■ Applying those factors to the present case, we note that Barrow consistently maintained that even though he had been hit on the head and told not to look at his assailants, he looked directly into defendant's face during the robbery, which took place under a street light. He clearly remembered the two assailants' faces and clothing, what they said, the quality of their voices, where each was positioned, the subsequent movements each made, and where each of the two guns was pointed, all of which indicate that Barrow "had viewed [the scene] with the close attention accorded unusual occurrences." (*People v. McTush* (1980), 81 Ill. 2d 513, 522, 410 N.E.2d 861, 866.) Further, Barrow testified that he had picked out defendant the moment he saw the lineup and never wavered in his identification. Finally, the lapse of time between the crime and the confrontation was only 36 hours.

The only factor in defendant's favor is the 7-inch, 30-pound discrepancy between Barrow's estimation of his assailant's height and weight and defendant's actual height and weight. Even though Barrow described the robber as 5 feet 3 inches tall and weighing 120 pounds while in fact defendant is 5 feet 10 inches tall and weighs 150 pounds, we do not regard that discrepancy as proof of a "substantial likelihood of misidentification." (*Neil v. Biggers* (1972), 409 U.S. 188, 201, 34 L. Ed. 2d 401, 412, 93 S. Ct. 375, 383.) Looking down from his own height of nearly 6 feet 6 inches, Barrow might well have

overestimated the difference in height and weight between the robber and himself. "[I]t is contrary to human experience to make an identification by noticing first the separate features \*\*\* and then \*\*\* running off a total to determine recognition or non-recognition. Ordinarily all features are viewed at once and the recognition made instantaneously or not at all. This is one of the reasons why minor discrepancies in identification do not require reversal." *People v. Ervine* (1965), 64 Ill. App. 2d 82, 87, 212 N.E.2d 346, 349.

On balance, the majority of the factors indicate a reliable identification, and Illinois courts have consistently held that height and weight errors in a complainant's description affect only the credibility of the witness and the weight to be given the testimony. (*People v. Crawford* (1980), 90 Ill. App. 3d 888, 414 N.E.2d 25; *People v. Nichols* (1975), 32 Ill. App. 3d 265, 336 N.E.2d 194.) In a bench trial, the determination of the credibility of witnesses and the weight to be given their testimony is a matter for the trier of fact and will not be disturbed unless palpably erroneous. (*People v. Arndt* (1972), 50 Ill. 2d 390, 280 N.E.2d 230.) After measuring the discrepancies against the remaining evidence, we conclude that the trial court's decision is not contrary to the weight of the evidence, nor the identification so unbelievable that any serious doubt of defendant's guilt has been raised. (*People v. Crawford* (1980), 90 Ill. App. 3d 888, 414 N.E.2d 25.) "Where the witness makes a positive identification, precise accuracy in the preliminary description is not necessary." *People v. Mendoza* (1978), 62 Ill. App. 3d 609, 616, 378 N.E.2d 1318, 1324.

## II

■ Defendant attempted to inflate the importance of Barrow's errors in describing his attacker by introducing the testimony of an expert witness who asserted that the observations and memory of people in stressful situations are very unreliable. Noting that the State made no attempt to impeach the expert or rebut his testimony, defendant maintains that the trial judge erred by arbitrarily rejecting the opinions offered by the expert. *People v. Harvey* (1919), 286 Ill. 593, 122 N.E. 138.

Our examination of the record indicates that the trial judge considered the expert testimony but found that when all the evidence was properly weighed, the State had proved defendant guilty beyond a reasonable doubt. It is axiomatic that it is within the discretion of the trier of fact to accept or reject the conclusions of experts. (*People v. Rockamann* (1979), 79 Ill. App. 3d 575, 399 N.E.2d 162.) "The ultimate issue was for the trial court, not the experts, to decide." (*People*

*v. Bilyew* (1978), 73 Ill. 2d 294, 302, 383 N.E.2d 212, 215.) Accordingly, we find no error in the trial court's conclusion that Barrow's identification was sufficiently reliable to support defendant's conviction of armed robbery.

### III

Defendant's second argument centers around the corroborating identification testimony of Maxine and Diane Griffin, the two occupants of the automobile struck by the car stolen from Barrow approximately 40 minutes earlier. Defendant attempts to disqualify the Griffins' identification on the ground that it concerned a subsequent crime and therefore, even if admitted to establish the identity of the criminal, is subject to the severe limitations governing admission of evidence of other crimes: the probative value must outweigh the prejudicial effect, and the evidence "should be confined to such details as show the opportunity for identification and not the details of the crime." (*People v. Butler* (1975), 31 Ill. App. 3d 78, 80, 334 N.E.2d 448, 450.) Defendant claims that no description of the Griffins' opportunity for observation was ever presented by the State.

Our review of the Griffin testimony at trial leads us to conclude that any shortcomings in the witnesses' description of their opportunity to observe and identify the two men resulted from defense attorney's continued objections to nearly every question asked by the State. Through its motion *in limine* to prevent the introduction of any evidence that the two men from the stolen car had raped and robbed the two women, the defense effectively foreclosed the State's opportunity to elicit any specifics of what had happened in the car after the men removed their masks. We therefore can not countenance defendant's complaint that as a result of his own motion he could not effectively cross-examine Diane Griffin without going into detail about the other crimes.

In *People v. Tranowski* (1960), 20 Ill. 2d 11, 16, 169 N.E.2d 347, 349, *cert. denied* (1960), 364 U.S. 923, 5 L. Ed. 2d 262, 81 S. Ct. 290, identification evidence "was properly admitted even though when seen by some of the witnesses [defendant] was engaged in the commission of other crimes." In *Tranowski*, the witness' evidence placed the defendant in the area at the correct time. In the instant case, the witnesses' testimony placed defendant in the driver's seat of the victim's stolen car within an hour of the robbery. Further, the fundamental reliability of the Griffins' identification testimony is based on the fact that the two women were "no casual observer[s], but rather the victim[s] of one of the most personally humiliating of all crimes."

(*Neil v. Biggers* (1972), 409 U.S. 188, 200, 34 L. Ed. 2d 401, 412, 93 S. Ct. 375, 382.) Much will depend on whether the witness was motivated to make a careful observation of the perpetrator, a victim having the greatest desire to seek out and retain the image. (See *United States ex rel. Phipps v. Follette* (2d Cir. 1970), 428 F.2d 912, 915, citing P. Wall, Eye-Witness Identification in Criminal Cases 125-27 (1965).) "Quick and sure identification at the first exposure *** affords some *** evidence of the definiteness of the earlier image." (*United States ex rel. Phipps v. Follette* (2d Cir. 1970), 428 F.2d 912, 915.) Where, as here, both women promptly picked out defendant at a lineup conducted soon after the crime, we conclude that the identification testimony was sufficiently probative to withstand any contention that the prejudicial effect was overwhelming. We therefore find no error in the trial court's admission of "evidence of other crimes *** so closely connected with the main issue that it tends to prove the accused guilty of the crime for which he is being tried." *People v. Tranowski* (1960), 20 Ill. 2d 11, 16, 169 N.E.2d 347, 349, *cert. denied* (1960), 364 U.S. 923, 5 L. Ed. 2d 262, 81 S. Ct. 290.

## IV

Last, defendant argues that the motion to suppress his identification should have been sustained because the lineup was so suggestive that his due process rights were denied. Defendant maintains that Barrow selected him out of a five-man lineup because of improperly suggestive lineup procedures, not a genuine recognition of defendant as his assailant. We disagree.

Defendant again points to the faulty description Barrow gave to the police as evidence that he never had a good look at the robber. Barrow described his assailant as "a medium-complected male Negro, 17-22 years old, 5'3", 120 pounds, with brown eyes, black hair, and wearing a gray jacket and dark pants." Defendant contends that the physical description was so inaccurate that Barrow's subsequent lineup identification of defendant had to be based on some other factor, namely, defendant's clothing. Therefore, because defendant was the only man in the lineup wearing a gray jacket, Barrow's identification was based solely on the similiarity of clothing worn by the assailant and by defendant.

The standard for judging whether or not a lineup was unduly suggestive was set forth generally in *Stovall v. Denno* (1967), 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967, applied in *Manson v. Braithwaite* (1977), 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243, and adopted by the Illinois Supreme Court in *People v. Manion*

(1977), 67 Ill. 2d 564, 571, 367 N.E.2d 1313, 1316-17:

> "In *Manson*, the Supreme Court unequivocally adopted the *Stovall* \*\*\* approach of 'totality of the circumstances' and rejected a *per se* approach to determine the admission of suggestive out-of-court identification evidence. The *per se* test would exclude identification or confrontation evidence 'without regard to reliability, whenever it has been obtained through unnecessarily suggested confrontation procedures.' [Citation.]
>
> The *Stovall* test of totality of the circumstances, on the other hand, 'permits the admission of the confrontation evidence if, despite the suggestive aspect, the out-of-court identification possesses certain features of reliability.' [Citation.] In other words, evidence of an unnecessarily suggestive identification may nevertheless be admitted at trial if reliability of the identification, under the totality of circumstances, is shown."

*Manion* concluded its analysis by stating that the same five factors from *Neil v. Biggers* (1972), 409 U.S. 188, 34 L. Ed. 2d 401, 93 S. Ct. 375, discussed earlier are to be used in assessing the reliability of an allegedly tainted lineup identification. As we decided in response to defendant's first argument, the application of the five factors to Barrow's identification of defendant indicates sufficient reliability to support defendant's conviction. During his testimony, Barrow repeatedly asserted that he recognized defendant's face. Moreover, any suggestiveness arose not because the suspect was forced to wear particular clothing, but because the defendant had selected as the clothing he wore on the evening he was arrested, clothing which fit defendant's description. He made his own selection, and we find that "[u]nder these circumstances, the procedure used would tend to aid the accuracy of the identification." *People v. Hamilton* (1977), 54 Ill. App. 3d 215, 218, 369 N.E.2d 377, 379.

From our consideration of the evidence, we are of the opinion that no reasonable doubt of defendant's guilt exists, and the trial court's decisions concerning challenged testimony and finding defendant guilty of armed robbery were not contrary to the weight of the evidence. The judgment of the trial court is therefore affirmed.

Affirmed.

JIGANTI and ROMITI, JJ., concur.