(No. 66703.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. WILLIE SLIM, Appellee.

*Opinion filed March 22, 1989.*

CALVO, J., took no part.

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Kenneth T. McCurry and Inge Fryklund, Assistant State's Attorneys, and Paula Carstensen, Special Assistant State's Attorney, of counsel), for the People.

Randolph N. Stone, Public Defender, of Chicago (James N. Perlman, Assistant Public Defender, of counsel), for appellee.

JUSTICE WARD delivered the opinion of the court:

Following a bench trial, the defendant, Willie Slim, was convicted of armed robbery in the circuit court of Cook County and sentenced to six years' imprisonment. The appellate court reversed the conviction on the grounds that the victim's identification testimony was vague and uncertain. (164 Ill. App. 3d 519, 529.) We granted the State's petition for leave to appeal (107 Ill. 2d R. 315).

At 1:45 a.m. on August 3, 1985, the victim, Porter Sledge, who was the only occurrence witness, parked his car on South Indiana Avenue in Chicago. After leaving the car, and as he was walking south, a man, who Sledge testified was the defendant and whom he later described to police as being 28 years old, 5 feet 3 inches tall and weighing 135 pounds, approached him. As the two came together, the man pointed a gun at Sledge, demanding his money, wallet and car keys. Sledge gave them to the robber and then watched the man back away, open the door to Sledge's car and drive away. Sledge called the police and gave the above description of the robber.

The defendant was arrested 10 days later in Milwaukee, Wisconsin. At the time, the defendant was riding as a passenger in Sledge's car. The next day, Sledge viewed a six-man lineup and positively identified the defendant

as the robber. At trial, the defendant stipulated to the lineup identification and at no time has contested the propriety of the identification procedures. Sledge also made a positive identification of the defendant in court. The in-court identification was also unchallenged.

At trial, Sledge testified that the street lights were on and that during the robbery the defendant stood face-to-face with him at a distance of one to two feet. On cross-examination, Sledge stated that he did not notice anything unusual about the defendant's teeth or mouth and that he was not paying particular attention to those features.

The defendant's father, as an alibi witness, testified that on the night of the robbery his son was at home in Milwaukee. He also stated that his son had several distinctive features, those being teeth braces and unusually thick lips. The father said that in August of 1985 the defendant was 22 years old, 5 feet 9 inches tall and weighed 165 pounds. A woman identified as the father's girlfriend was called as a defense witness and testified that the defendant wore braces during August of 1985 and that she would estimate his height to be 5 feet 2 inches. No measurement of the defendant appears to have been made. The defendant did not testify. The trial court found him guilty of armed robbery and imposed a sentence of six years.

The appellate court reversed the defendant's conviction, judging that the identification of the defendant was doubtful because of the discrepancy between the victim's preliminary description of the robber and the defense's description of Slim and because the victim did not notice what the court called "unique" facial features. The court also observed that the defense had given an unimpeached alibi. 164 Ill. App. 3d at 529.

The defendant contends that no objective evidence supports the victim's identification of him as the robber.

The question is whether the identification of the defendant as the robber was proved beyond reasonable doubt.

The prosecution has the burden of proving beyond reasonable doubt the identity of the person who committed the crime. (Ill. Rev. Stat. 1987, ch. 38, par. 3—1.) An identification will not be deemed sufficient to support a conviction if it is vague or doubtful. (*People v. Ash* (1984), 102 Ill. 2d 485, 494; *People v. Cullotta* (1965), 32 Ill. 2d 502, 504.) A single witness' identification of the accused is sufficient to sustain a conviction if the witness viewed the accused under circumstances permitting a positive identification. (*People v. Johnson* (1986), 114 Ill. 2d 170, 189; *People v. Vriner* (1978), 74 Ill. 2d 329, 343.) This is true even in the presence of contradicting alibi testimony, provided that the witness had an adequate opportunity to view the accused and that the in-court identification is positive and credible. *People v. Yates* (1983), 98 Ill. 2d 502, 525; *People v. Winston* (1987), 160 Ill. App. 3d 623, 629; *People v. Fairbanks* (1986), 141 Ill. App. 3d 909, 913.

In a bench trial it is for the trial judge to determine the credibility of witnesses, to weigh evidence and draw reasonable inferences therefrom, and to resolve any conflicts in the evidence. (*People v. Berland* (1978), 74 Ill. 2d 286, 305-06; *People v. Mendoza* (1978), 62 Ill. App. 3d 609, 615.) On review the trial court's judgment will not be set aside unless the proof is so unsatisfactory, improbable or implausible as to justify a reasonable doubt as to the defendant's guilt. *People v. Johnson* (1986), 114 Ill. 2d 170, 190; *People v. Collins* (1985), 106 Ill. 2d 237, 261; *People v. Sakalas* (1980), 85 Ill. App. 3d 59, 68.

In assessing identification testimony, our courts have generally been using steps set out by the Supreme Court in *Neil v. Biggers* (1972), 409 U.S. 188, 34 L. Ed. 2d 401, 93 S. Ct. 375. There the Court held that circumstances to be considered in evaluating an identification

include: (1) the opportunity the victim had to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the victim at the identification confrontation; and (5) the length of time between the crime and the identification confrontation. *People v. Cohoon* (1984), 104 Ill. 2d 295, 300; *People v. Bryant* (1983), 94 Ill. 2d 514, 521; *People v. Dean* (1987), 156 Ill. App. 3d 344, 351; *People v. Taylor* (1986), 143 Ill. App. 3d 252, 255; *People v. Brown* (1982), 110 Ill. App. 3d 1125, 1128.

The defendant argues that three of these factors weigh in his favor. First, he says that although Sledge may have had the opportunity to observe the robber, he did not use that opportunity because he was unable to describe several features of the robber, *viz.*, his hair, the color or type of clothes he was wearing, the presence of braces or the prominence of his lips. Second, the defendant argues that the description that Sledge did give simply did not match that of the defendant. And third, the lineup identification took place 11 days after the robbery when the victim's memory was less than fresh.

As a general proposition, it can be said that discrepancies and omissions as to facial and other physical characteristics are not fatal, but simply affect the weight to be given the identification testimony. Variances between a witness' trial testimony and pretrial statements raise questions of credibility which the trier of fact must assess in making a determination of guilt. *People v. Miller* (1964), 30 Ill. 2d 110, 113; *People v. Fairbanks* (1986), 141 Ill. App. 3d 909, 913-14; *People v. Reyes* (1982), 108 Ill. App. 3d 911, 918; *People v. Brown* (1977), 50 Ill. App. 3d 348, 354; *People v. Mays* (1976), 38 Ill. App. 3d 182, 185; *People v. Chatman* (1975), 32 Ill. App. 3d 506, 510.

It has consistently been held that a witness is not expected or required to distinguish individual and separate

features of a suspect in making an identification. Instead, a witness' positive identification can be sufficient even though the witness gives only a general description based on the total impression the accused's appearance made. (*People v. Winston* (1987), 160 Ill. App. 3d 623, 628; *People v. Dean* (1987), 156 Ill. App. 3d 344, 351; *People v. Brown* (1982), 110 Ill. App. 3d 1125, 1129; *People v. Mendoza* (1978), 62 Ill. App. 3d 609, 616; *People v. Smith* (1977), 52 Ill. App. 3d 583, 587; *People v. Moore* (1977), 50 Ill. App. 3d 952, 957.) This is consistent with the nature of human observation. As the court in *People v. Ervine* noted,

"[I]t is contrary to human experience to make an identification by noticing first the separate features *** and then, somehow, running off a total to determine recognition or non-recognition. Ordinarily all features are viewed at once and the recognition made instantaneously or not at all." (*People v. Ervine* (1965), 64 Ill. App. 2d 82, 87.)

The presence of discrepancies or omissions in a witness' description of the accused do not in and of themselves generate a reasonable doubt as long as a positive identification has been made. *People v. Harrison* (1978), 57 Ill. App. 3d 9, 15.

In *People v. Bias* (1985), 131 Ill. App. 3d 98, 105, the court held that a witness' failure to describe the length of the defendant's hair, the condition of her teeth (several of which were missing) and the existence of a facial scar were minor omissions which did not make the victim's positive identification insufficient to support the conviction. See also *People v. Miller* (1964), 30 Ill. 2d 110, 113; *People v. Nims* (1986), 156 Ill. App. 3d 115, 121 (where the victims' failure to mention facial scars did not create reasonable doubt); *People v. Sakalas* (1980), 85 Ill. App. 3d 59, 69 (where the victim's testimony was sufficient despite his inability to recall whether his assailant had a scar or a moustache); *People*

*v. Mays* (1976), 38 Ill. App. 3d 182, 184 (where the victim's identification testimony was sufficient though the witness failed to include two prominent physical characteristics, missing teeth and a 2½-inch tattoo, in his description to the police).

It has also been held that a failure to notice facial hair is not fatal to a positive and otherwise credible identification. (See, *e.g., People v. Calhoun* (1971), 132 Ill. App. 2d 665, 668 (where the defendant had a large and thick moustache, which the victim did not mention in any preliminary descriptions). See also *People v. Catlett* (1971), 48 Ill. 2d 56, 63; *People v. Taylor* (1986), 143 Ill. App. 3d 252, 255; *People v. Brown* (1977), 50 Ill. App. 3d 348, 354.) That the victim was unable to identify the type or color of clothing the subject was wearing has been held not to make an identification vague or uncertain where the identification is otherwise positive. (See *People v. Harrison* (1978), 57 Ill. App. 3d 9, 14-15; *People v. Marbley* (1975), 34 Ill. App. 3d 434, 439.) The court in *People v. Reyes* (1982), 108 Ill. App. 3d 911, 918, held that a victim's failure to observe the suspect's teeth braces was not fatal to the identification, especially since the crime took place at night and only a few words were spoken by the defendant.

Thus, a number of the defendant's contentions parallel factual situations already considered and held not to affect the convictions. The defendant, citing *People v. Carroll* (1970), 119 Ill. App. 2d 314, argues that these adverse decisions are inapplicable, because Sledge explicitly stated that he was not paying attention to the identity of the robber. A reading of *Carroll* shows that the facts regarding the reliability of the identification testimony are clearly distinguishable. Here the defendant's argument misstates the victim's testimony. What Sledge said was: "I wasn't paying any attention to his lips." This obviously was simply a response to defense coun-

sel's cross-examination concerning the size of the defendant's lips. Sledge was saying that he noticed nothing unusual about the defendant's lips, not that he was not paying attention to the identity of the robber. What is more, the victim testified he had a continuous and unobstructed view of the unmasked robber, who was only one or two feet away from him at the time he demanded the money, and who faced him while backing away 10 to 15 feet to the victim's car. The victim's testimony shows that the victim had an unimpeded opportunity to view the robber under well-illuminated conditions. The findings of the sophisticated trier of fact, the trial judge, do not raise a reasonable doubt as to the defendant's identification and guilt.

The defendant also contends that the victim's credibility was destroyed because the general body size of the man he described to police was radically different from that of the defendant. Considering that very few persons are trained or keen observers and considering the stress under which, in criminal cases particularly, impressions of witnesses have been formed, discrepancies of this character are not uncommon. In *People v. Calhoun* (1971), 132 Ill. App. 2d 665, 668, for example, the court held that a 5½- to 6½-inch and 30-pound variation did not destroy the credibility of the eyewitness' identification. A 5- to 15-year difference in age, a 50-pound difference in weight and several inches difference in height were found in *People v. Chatman* (1975), 32 Ill. App. 3d 506, 510, not to destroy the credibility of the victim's identification. In *People v. Moore* (1977), 50 Ill. App. 3d 952, 956, a similar finding was made where there was a 60-pound discrepancy between the description the victim gave the police and the defendant's actual weight. And in *People v. Brown* (1982), 110 Ill. App. 3d 1125, 1128, though the victim had described the robber to be 5 feet 3 inches, 120 pounds and the defendant was 5 feet 10

inches, 150 pounds, the court concluded that the discrepancy did not lead to "substantial likelihood of misidentification" and therefore did not negate the positive identification by the eyewitness.

In *People v. Byas* (1983), 117 Ill. App. 3d 979, 985-86, the court found that a 4-inch, 40-pound discrepancy in a victim's description was sufficient to make the victim's identification vague and uncertain. *Byas* is not inconsistent with the above decisions, however, because the victim's identification of the defendant as her assailant was not positive or certain. (She picked the defendant's picture only after officers told her to select the man most resembling her assailant and her identification of the defendant in a lineup was hesitating and equivocal.) Too, there was no corroborating evidence of the defendant's identification. (*People v. Byas*, 117 Ill. App. 3d at 986.) Here the defendant was found in Sledge's stolen car.

Courts typically have not considered discrepancies as to height and weight alone as decisive factors on review because few persons are capable of making accurate estimations of such characteristics. (*People v. Evans* (1962), 25 Ill. 2d 194, 201; *People v. Winston* (1987), 160 Ill. App. 3d 623, 628.) Here, somewhat to the embarrassment of the defendant's argument, two persons who knew the defendant, his father and the father's girlfriend, gave sharply different estimates as to Slim's height.

In *People v. Evans* (1962), 25 Ill. 2d 194, 201, this court held that a rape victim's 5½-inch, 25-pound inaccuracy in the preliminary description of her attacker was not of decisive importance in light of her positive identification. The court so concluded because the jury not only heard the testimony, but saw the defendant in court, and was therefore in a far better position than a reviewing court to evaluate the weight to be given to the discrepancies in the description. This court was, there-

fore, unwilling to conclude that the jury was required to regard the discrepancies as sufficient to create a reasonable doubt as to the defendant's guilt or to cast doubt on the clear and positive identification made by the complaining witness. Such reasoning is equally applicable to the discrepancies here. The trial judge was in a better position than we to judge the significance of the discrepancies.

The defendant cites *People v. Marshall* (1966), 74 Ill. App. 2d 483, to support his claim that the identification was vague and uncertain. There the court held that a 5-inch discrepancy between the defendant's height and the complaining witness' estimate created doubt as to the identification and that the witness' inability to say whether the defendant had a moustache discredited his identification. These factors, the court said, completely outweighed the evidence that six days after the incident the witness picked the defendant's photograph as that of the man who robbed him and that five weeks later the witness picked the defendant out of a lineup. (*People v. Marshall*, 74 Ill. App. 2d at 485.) We do not regard the holding in *Marshall* as persuasive. The decision has been criticized rather than followed. See *People v. Fairbanks* (1986), 141 Ill. App. 3d 909, 914; *People v. Mendoza* (1978), 62 Ill. App. 3d 609, 618.

The defendant argues too that the lapse of time between the crime and the identification of the defendant supports his claim that the victim's memory of the event was dulled. Considering the nature of the event and other circumstances, the interval of 11 days was not significant. The length of time between the date of the crime and the date of the identification as affecting identification has been considered in a number of decisions. Holdings upholding identifications made a considerable time after the crime include *People v. Rodgers* (1972), 53 Ill. 2d 207, 214 (identification made two years after the

crime); *People v. Dean* (1987), 156 Ill. App. 3d 344, 352 (identification made 2½ years later); *People v. Chatman* (1975), 32 Ill. App. 3d 506, 510 (identification made one month following the incident); *People v. Bennett* (1973), 9 Ill. App. 3d 1021, 1026 (identification made one month after the crime).

The defendant next argues that there were many discrepancies in Sledge's identification and the identification should be held insufficient as a matter of law. We cannot accept the contention and in addition would note that the defendant in making it overlooks the fact that the victim's identification was corroborated. In *People v. Johnson* (1986), 114 Ill. 2d 170, 191, the court pointed out that although the victim's initial description of her attacker was inaccurate, her testimony was positive and corroborated by "overwhelming circumstantial evidence." (See also *People v. Miller* (1964), 30 Ill. 2d 110, 113.) The defendant in *People v. Bias* (1985), 131 Ill. App. 3d 98, argued that she was not proved guilty beyond a reasonable doubt because the victim failed to mention the defendant's missing teeth and was incorrect in indicating weight and height. The court, upholding the defendant's conviction, pointed out that the defendant's argument failed to take into account that the witness' identification was corroborated by independent evidence. In *People v. Moore* (1977), 50 Ill. App. 3d 952, 958, despite discrepancies in the witness' identification testimony, the conviction was corroborated in that the defendants, at the time of arrest, were riding in an old car with three children, similar to the car and children described by witnesses at the scene of the crime.

Here, Sledge made a positive identification both at a lineup and at trial and the defendant was arrested some 90 miles away from Chicago in the car stolen during the robbery. The defendant, in his brief, makes no mention

of this corroboration and the appellate court too over-looked it.

Finally, the defendant contends that the alibi testimony of his father that he was at home asleep on the night of August 3 created a reasonable doubt as to his guilt. The weight to be given alibi evidence is a question of credibility for the trier of fact (*People v. Weatherspoon* (1978), 63 Ill. App. 3d 315, 327), and there is no obligation on the trier of fact to accept alibi testimony over positive identification of an accused (*People v. Berland* (1978), 74 Ill. 2d 286, 307; *People v. Catlett* (1971), 48 Ill. 2d 56, 64).

The defendant points to two decisions, *People v. Gardner* (1966), 35 Ill. 2d 564, 573, and *People v. Gooden* (1949), 403 Ill. 455, 462, in which the existence of weak identification testimony was insufficient to establish the identity of the defendant beyond a reasonable doubt, given the strong alibis presented by the defendant. Both *Gardner* and *Gooden*, however, are distinguishable. In each case there was no corroborating testimony to support the witnesses' identification and the alibi testimony came from seemingly independent witnesses who were not relatives of the defendant. Here, the identification testimony of Sledge was convincingly corroborated and the alibi witness was his own father.

From our examination of the record, we conclude that the findings of the trial judge, a sophisticated trier of fact, do not raise a reasonable doubt as to the defendant's identification and guilt. We therefore affirm the judgment of the circuit court and reverse the judgment of the appellate court.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*

JUSTICE CALVO took no part in the consideration or decision of this case.