SECOND DIVISION
January 17, 2006

No. 1-04-0701

THE PEOPLE OF THE STATE OF ILLINOIS,    )    Appeal from the
                                        )    Circuit Court of
          Plaintiff-Appellee,           )    Cook County.
                                        )
     v.                                 )
                                        )
WESLEY SLAYTON,                         )    Honorable
                                        )    Thomas R. Sumner,
          Defendant-Appellant.          )    Judge Presiding.


JUSTICE WOLFSON delivered the opinion of the court:

Following a bench trial, defendant Wesley Slayton was found guilty of armed robbery and sentenced to six years' imprisonment. On appeal, defendant contends: (1) the State failed to prove him guilty beyond a reasonable doubt; (2) the trial court erred in refusing to conduct an in camera inspection of the State's felony review folder; and (3) the compulsory extraction and inclusion of his DNA in state and national databases, pursuant to section 5-4-3 of the Unified Code of Corrections (Code) (730 ILCS 5/5-4-3 (West 2002)), violated his fourth amendment right to be free from unreasonable searches and seizures. Although we find the trial court's refusal to conduct the in camera inspection was error, we affirm the defendant's conviction and sentence.

FACTS

On January 8, 2003, defendant was arrested and charged with the armed robbery of Alvin Brown. Defendant filed a written

1-04-0701

pretrial motion for an in camera inspection of the State's felony review folder. In it, defendant sought "any and all information" contained in the folder "relating to evidence and/or witnesses that may exculpate" him. The request was based on reports that the State at first chose not to charge him with robbery following a second interview with Brown.

The trial court denied the motion, finding defendant failed to present sufficient facts to warrant an in camera inspection of the felony review folder. The court reasoned that defendant had nothing more than a suspicion about the exculpatory nature of the evidence contained in the felony review folder and that the State had indicated that all discoverable documents had been produced.

The evidence adduced by the State at trial showed that at about 4 a.m. on November 15, 2001, complainant Alvin Brown was robbed at gunpoint by a man later identified as defendant. Brown, an electrician, parked his service vehicle in the alley behind his house when defendant approached, armed with a handgun, and asked Brown for what he had. Brown dropped his money, wallet, and cellular telephone to the ground. Dissatisfied, defendant insisted that Brown had more and patted down his clothing. Defendant found nothing and then told Brown to leave or he would shoot him. Brown backed away slowly, keeping his eyes on defendant because he was afraid to turn his back to him.

1-04-0701

However, when defendant warned him to run or be shot, Brown turned away and fled. Brown called the police from a nearby gas station.

Brown saw defendant on two subsequent occasions, but he did not call the police because, each time, defendant disappeared too quickly. However, on January 8, 2003, Brown contacted the police when he saw defendant walking in and out of the alley behind Brown's house. When the police arrived, Brown said defendant was sitting on the front porch of a building one block away. The police arrested defendant on the roof of that building. Brown positively identified defendant as the man who had robbed him.

On cross-examination, Brown said he gave the police a description of the offender on the date of the robbery, but he denied ever describing him as 5 feet 10 inches tall. Brown also told police the offender had a thin mustache and was dark complected, which was consistent with another description he later gave to police. He admitted the offender was 6 feet 4 inches tall.

On further cross-examination, Brown said he had asked neighbors if they saw anything that might be helpful, but denied he was trying to obtain a better description of the offender. Brown also said he had learned from someone that the person involved was named "Wesley."

Detective Jasica spoke with defendant at the hospital where he was awaiting treatment for an asthma attack following his arrest. Defendant first denied any knowledge or involvement in the armed robbery. When Detective Jasica reminded him of the seriousness of the charge, defendant admitted he knew Brown, who simply did not like him, and that he had words with him before the day of the robbery.

After defendant was released from the hospital, Detective Jasica and Assistant State's Attorney Horner spoke with defendant at the police station. Defendant said he was not truthful in his earlier conversation with Detective Jasica because he was afraid of getting into trouble. He then said Brown owed him money for drugs he had sold to Brown on credit. Defendant said Brown visited his home once and promised to pay him back, but he never saw him again.

When Detective Jasica again reminded defendant of the charge against him, defendant said something different. This time, defendant said he and his friends went to Brown's home and demanded his money. Defendant said he was unarmed, but that one of his friends showed Brown a handgun and took a cellular telephone from him.

On cross-examination, Detective Jasica admitted he had indicated in his general case report there was a problem with

Brown's identification of defendant.  He explained, however, that the discrepancy involved the height of the offender, which he viewed as a minor matter.  Defense counsel then asked Detective Jasica whether felony charges were initially rejected based on Brown's identification of defendant, and the trial court sustained the State's objection based on relevancy because "[defendant] is here, so apparently they did."

The defense first called Chicago police officer Percy Alexander as a witness.  Officer Alexander said he went to the scene of the incident and filled out a general offense case report based on his conversation with Brown.  He indicated in his report that the offender was 5 feet 10 inches tall and dark complected with brown eyes; there was no mention of a mustache or the body size of the offender.

Detective Valerie Ford said she spoke with Brown on November 28, 2001.  Brown told her the offender was named "Wesley," that he was 6 feet 4 inches tall, and had a dark complexion.

Following closing arguments, the court found defendant guilty of armed robbery.  In doing so, the court noted the minor discrepancy in the height description given to police by Brown and also observed Brown did not mention a mustache or estimate body size.  The court found Brown's testimony was credible.  In

1-04-0701

doing so, the court noted Brown "had ample time to view his assailant at the time that the event took place."

DECISION

Defendant first contends that the State failed to prove his identity as the offender beyond a reasonable doubt. When a defendant challenges the sufficiency of the evidence, the relevant question on review is whether, after considering the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. People v. Schott, 145 Ill. 2d 188, 203, 582 N.E.2d 690 (1991). A criminal conviction will not be set aside on review unless the evidence is so unlikely or inadequate that a reasonable doubt of defendant's guilt remains. People v. Jimerson, 127 Ill. 2d 12, 43, 535 N.E.2d 889 (1989). We do not find this to be such a case.

The identification of defendant by a single witness is sufficient to sustain a conviction despite testimony to the contrary, provided the witness is credible and observed defendant under circumstances that would permit a positive identification to be made. People v. Sutton, 252 Ill. App. 3d 172, 180, 624 N.E.2d 1189 (1993). Discrepancies in features such as height are not dispositive because few persons are capable of making accurate estimations of such characteristics. People v. Slim,

1-04-0701

127 Ill. 2d 302, 311-12, 537 N.E. 2d 317 (1989), citing People v. Brown, 110 Ill. App. 3d 1125, 1128, 443 N.E.2d 665 (1982) (7 inch discrepancy did not lead to "substantial likelihood of misidentification"); People v. Calhoun, 132 Ill. App. 2d 665, 668, 270 N.E.2d 450 (1971) (5 ½ to 6 ½ inch variation did not destroy eyewitness credibility). Here, the evidence showed that Brown backed away slowly from defendant after he was robbed, and closely focused on the defendant before turning and running away. This testimony supports the conclusion that the victim had a good enough opportunity to view the offender under conditions that would permit subsequent recognition. People v. Thomas, 72 Ill. App. 3d 186, 195-96, 389 N.E.2d 1330 (1979).

Defendant contends, nevertheless, that the lapse of more than one year between the event and the victim's identification of him, the difference between his height and Brown's estimates of his height, and the fact Brown learned his name based on conversations with neighbors combine to raise a reasonable doubt of his guilt. We disagree. See People v. Rodgers, 53 Ill. 2d 207, 214, 290 N.E.2d 251 (1972). The lapse of time goes only to the weight of the testimony, a question for the trier of fact. It does not destroy the witness's credibility. Rodgers, 53 Ill. 2d at 214. That Brown saw defendant on two subsequent occasions and failed to contact police is not as significant as defendant

1-04-0701

suggests; Brown explained that, each time, he only caught a glimpse of defendant before he disappeared.

We find the identification testimony, combined with the defendant's various statements, considered in the light most favorable to the State, sufficient to support the trial court's finding that defendant was the man who robbed Brown at gunpoint. Slim, 127 Ill. 2d at 307.

Defendant next contends the trial court erred in refusing to conduct an in camera inspection of the State's felony review folder. He asserts that "there is a possibility in this case that the *** felony review folder contains substantially verbatim accounts of the interviews with Mr. Brown," and that the trial court should have conducted an in camera review of the folder to determine whether it contained any discoverable material. Defendant's argument is based on Supreme Court Rule 412(a)(i) (188 Ill. 2d R. 412(a)(I)) and Brady v. Maryland, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963).

An in camera inspection of documents is required if the State refuses disclosure when defendant has made a specific demand for the document and has made a preliminary showing of the document's relevancy to a witness's trial testimony. People v. Szabo, 94 Ill. 2d 327, 345, 447 N.E.2d 193 (1983). Defense counsel's written motion triggers the Rule 412 (a)(i) requirement

that the trial court examine in camera any memorandum that reports or summarizes an oral statement.  If the memorandum is found to be a substantially verbatim report of an oral statement by a potential witness it has to be disclosed to defense counsel. Here, the trial court said it found no reason for an in camera inspection because defendant had presented nothing more than suspicion and failed to present enough facts to warrant the inspection.

Defense counsel made a specific demand for an in camera inspection of the felony review folder.  He based his demand on the unchallenged assertion that an assistant state's attorney, after interviewing Brown, recommended that no robbery charge be filed.  Since the defense lawyer had not been allowed to see the folder, we do not see what else he could have done to persuade the trial judge to examine it.

When we first examined the briefs in this case the folder was not part of the record.  We ordered the State to deliver the folder to the trial judge for an in camera inspection.  It was delivered and it was inspected.  The trial judge found nothing in the folder that would have been helpful to the defense.  The folder was resealed and delivered to this court.

We have examined and resealed the folder.  We, too, find nothing in it that would be of assistance to the defense.  At the

1-04-0701

same time, we are puzzled by the State's unwillingness to allow the in camera inspection at trial. The inside two pages of the folder contain oral statements made by the defendant and the victim, Brown. The outside of the folder and one small portion of the inside arguably contain work product, but that is a decision that should be made by the judge, not the State.

The trial court erred when it refused to examine the folder. See People v. Norris, 8 Ill. App. 3d 931, 291 N.E.2d 184 (1972). The error turns out to be harmless, although it caused unnecessary delay and expenditure of time and effort by the attorneys, by this court, and by the Illinois Supreme Court, which was asked to reverse our order for production and examination of the folder. We believe it is the trial court's obligation to ensure confidence in the outcome of a criminal trial. Refusing to examine possibly relevant documents does not further that goal. Investing 10 minutes or less in an in camera inspection would have made this a nonissue. The folder will remain sealed, but now is part of the record in this case.

Lastly, defendant contends the compulsory extraction and inclusion of his DNA in state and national databases, pursuant to section 5-4-3 of the Unified Code of Corrections (Code) (730 ILCS 5/5-4-3 (West 2002)), violates his fourth amendment right to be free from unreasonable searches and seizures because the purpose

1-04-0701

of taking his blood serves no special need beyond general law enforcement.

This court has consistently rejected constitutional challenges to section 5-4-3 of the Code such as the one raised by defendant in this case. See People v. Hall, 352 Ill. App. 3d 537, 816 N.E.2d 703 (2004); People v. Ramos, 353 Ill. App. 3d 133, 817 N.E.2d 1110 (2004); People v. Peppers, 352 Ill. App. 3d 1002, 817 N.E.2d 1152 (2004); People v. Smythe, 352 Ill. App. 3d 1056, 817 N.E.2d 1100 (2004); People v. Edwards, 353 Ill. App. 3d 475, 818 N.E.2d 814 (2004); People v. Butler, 354 Ill. App. 3d 57, 819 N.E.2d 1133 (2004); People v. Foster, 354 Ill. App. 3d 564, 821 N.E.2d 733 (2004); People v. Garvin, 349 Ill. App. 3d 845, 812 N.E.2d 773 (2004), appeal allowed, 212 Ill. 2d 541, 824 N.E.2d 287 (2004); and People v. Redmond, 357 Ill. App. 3d 256, 828 N.E.2d 1206 (2005). We continue to adhere to the holding that section 5-4-3 is constitutional and we reject defendant's arguments in this case.

Accordingly, we affirm the judgment of the circuit court of Cook County.

Affirmed.

GARCIA, P.J., and SOUTH, J., concurring.