NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 180086-U

NO. 4-18-0086

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 14, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Vermilion County |
| JORDAN L. CROSBY, | ) | No. 16CF779 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Thomas M. O'Shaughnessy, |
| | ) | Judge Presiding. |

JUSTICE HOLDER WHITE delivered the judgment of the court.
Justices Turner and Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The appellate court affirmed, finding (1) the evidence was sufficient to convict
the defendant and (2) the trial court was not required to conduct a *Krankel*
inquiry. The appellate court remanded where the trial court committed plain error
in failing to set a restitution payment deadline as required by statute.

¶ 2    Following an August 2017 jury trial, defendant, Jordan L. Crosby, was found guilty

of two counts of armed robbery with a firearm (720 ILCS 5/18-2(a)(2) (West 2016)) and one count

of unlawful vehicular invasion (*id.* § 18-6(a)). In October 2017, the trial court sentenced defendant

to 24 years in prison and ordered him to pay $690.61 in restitution.

¶ 3    Defendant appeals, arguing (1) the evidence was insufficient to prove defendant

guilty of armed robbery and unlawful vehicular invasion beyond a reasonable doubt, (2) the trial

court failed to conduct a preliminary inquiry pursuant to *People v. Krankel*, 102 Ill. 2d 181, 464

N.E.2d 1045 (1984) following defense counsel's posttrial admission that he failed to present newly discovered potential alibi evidence, and (3) the trial court's order requiring defendant to pay restitution should be vacated. For the following reasons, we affirm defendant's conviction and sentence and remand to allow the court to set a restitution payment deadline for its restitution order.

¶ 4                                                    I. BACKGROUND

¶ 5        On November 14, 2016, the State charged defendant by information with the following: two counts of armed robbery with a firearm, both Class X felonies (720 ILCS 5/18-2(a)(2) (West 2016)); two counts of aggravated robbery, both Class 1 felonies (*id.* § 18-1(b)(1)); two counts of robbery, both Class 2 felonies (*id.* § 18-1); and two counts of vehicular invasion, both Class 1 felonies (*id.* § 18-6).

¶ 6                                                    A. Jury Trial

¶ 7        On August 8, 2017, defendant's case proceeded to a jury trial where the following evidence was presented.

¶ 8                                              1. *The State's Case-in-Chief*

¶ 9                                                    a. Caleb Cordes

¶ 10        Caleb Cordes testified he was from Danville, Illinois, and was 18 years old. On October 28, 2016, Cordes was a high school student. Around 4 p.m. that day, Cordes was leaving a friend's house to pick up another friend and play basketball. Cordes was driving north on Oak Street in Danville with Dwayne Laseter, who was in the passenger's seat of Cordes's Chevrolet truck. When he approached the intersection of Oak and Voorhees Streets, he saw, from the east, "[t]wo men come around the corner walking down the sidewalk, and one pulled a gun out." The two men approached Cordes's truck from the passenger's side. Cordes identified defendant as the man with a gun.

¶ 11    Cordes testified that as defendant approached the truck, defendant put the gun to Laseter's chest, who "bumped" the gun. Defendant reacted by cocking the gun. Cordes testified he was not very familiar with guns but described the gun defendant used as "gray and black" and "semi-automatic." When defendant cocked the gun, Cordes heard him say, " 'Give me everything or I'm going to blow your head off.' "

¶ 12    The other man who was with defendant "opened the door and told [Cordes] to put [his] hands up, and he started going through [Cordes's] pockets and taking everything." Cordes testified this man did not appear to have any weapons. Cordes testified that the man took his iPhone, $50, and his wallet, which contained his driver's license, credit card, and gift cards. Cordes saw defendant take Laseter's Android mobile phone and some amount of cash. The two men fled. Cordes attempted to see where they were going but could not find them and proceeded to drive home to call his mother. Cordes testified he remembered defendant had lighter skin, long hair, a bigger build, and a "wispy" mustache.

¶ 13    On cross-examination, Cordes testified he made a prior statement to the police where he stated defendant was wearing a blue and orange jacket that said "Illini" across the front during the robbery. Cordes also testified that later on October 28, 2016, he saw a picture of Juan Ortiz on Laseter's Facebook page. He recognized Ortiz as the man who robbed him and identified Ortiz from a photograph line-up at the police station on November 1, 2016. Cordes was called to the police station again on November 4, 2016, where he identified defendant from a photographic lineup as the other man involved in the robbery and the one who had the gun.

¶ 14                          b. Jacob Troglia

¶ 15    Jacob Troglia testified he is a police officer with the Danville Police Department. On October 28, 2016, Officer Troglia was on patrol with another Danville police officer, Officer

Crawley. Around 4:25 p.m., he received a dispatch regarding an armed robbery that took place in the area of Oak and Voorhees Streets. After searching the area but not finding any suspects matching the descriptions he was provided, Officer Troglia went to the home of Caleb Cordes. When he arrived, Cordes and Laseter were still in Cordes's truck. Officer Troglia testified that Cordes gave him a statement but Laseter was not as cooperative.

¶ 16 On cross-examination, Officer Troglia testified that to his knowledge, no gun, cell phones, bank card transactions, or clothing was recovered in this case.

¶ 17 c. Juan Ortiz

¶ 18 Juan Ortiz testified he was 19 years old and had lived in Danville all his life. Ortiz testified he was currently residing in the Danville Public Safety Building in connection with armed robbery charges related to the events in this case. Ortiz testified that he had entered into a plea agreement with the State in which he would receive four years in the Department of Corrections in exchange for his truthful testimony in the present case.

¶ 19 Ortiz testified that on October 28, 2016, he was on Franklin Street at the home of his child's mother, Alexus Crosby, along with defendant, who he knew through Alexus. Defendant asked Ortiz to walk with him to go pick up some marijuana; defendant did not want to go alone because he believed the people from whom he intended to buy the marijuana might have a gun. Ortiz testified defendant showed him that he was carrying a black gun by lifting his shirt and showing Ortiz where it was tucked into his pants.

¶ 20 Ortiz testified that as he and defendant approached the intersection of Oak and Voorhees Streets, he saw a tan truck pull up. Ortiz saw that there was a white male in the driver's seat and a black male in the passenger's seat. Ortiz testified that as defendant approached the passenger's side of the truck, defendant said to the passenger, " 'Give me everything or you'll

die.' " Defendant was pointing the gun at the passenger. Ortiz testified defendant directed him to approach the driver's side of the car to find the marijuana. Ortiz proceeded to the driver's side of the car and took a bag of marijuana from the driver's lap but did not take anything else or say anything to the driver. Defendant took a "big black" bag of weed from the passenger. Afterwards, Ortiz and defendant returned to the house on Franklin Street.

¶ 21                                      d. Bill West

¶ 22           Bill West testified he is currently retired and previously worked as a detective with the Danville Police Department. On November 4, 2016, Detective West acted as an independent administrator of a photograph lineup in connection with this case. Detective West testified that an independent administrator is one who "doesn't have anything to do with *** a particular case," and "shows [witnesses] the pictures, which they look at, and if the person that is involved with [that] case is in the photo lineup, they are instructed to circle it, initial it and date it."

¶ 23           The State then introduced State's Exhibit No. 2, which was a copy of the photograph lineup that Detective West administered to Caleb Cordes on November 4, 2016. Detective West testified that Cordes circled the photo in the middle of the top row of the lineup and signed his initials next to it. The court admitted the exhibit into evidence over defendant's objection and allowed publication to the jury. Detective West had no further involvement in this case.

¶ 24           On cross-examination, Detective West testified that because he was the independent administrator, he did not prepare the photograph lineup. Detective West denied tapping on the photo in the middle of the top row prior to administering the lineup to Cordes. On redirect examination, Detective West testified he did not know who the suspect was when he administered the lineup.

¶ 25                                 e. Phillip Wilson

¶ 26         Phillip Wilson testified he has been a detective with the Danville Police Department since 2006. Detective Wilson testified that on November 1, 2016, Detective Dunham asked him to administer a photograph lineup to Cordes in connection with this case. As an independent administrator, Detective Wilson did not prepare the lineup and did not know who the suspect was.

¶ 27         The State then introduced State's Exhibit No. 1, which Detective Wilson identified as a copy of the photograph lineup he administered to Cordes. Detective Wilson testified that Cordes circled the photo located on the bottom right and signed his initials next to it. After Detective Wilson administered the lineup, he later met the individual whose picture Cordes circled and stated his name was Juan Ortiz. State's Exhibit No. 1 was then admitted into evidence.

¶ 28         The State then showed Detective Wilson a copy of State's Exhibit No. 2, about which Wilson testified he had no personal experience. Detective Wilson recognized the person circled in the lineup and identified him as defendant. Detective Wilson testified his first contact with defendant occurred after he acted as independent administrator for the November 1, 2016, lineup.

¶ 29         On cross-examination, Detective Wilson testified that he did not recall a gun, clothing, or cell phones being recovered in this case. On redirect examination, over defendant's objection, Detective Wilson testified he believed both of the photograph lineups administered in this case conformed with the standards and practices of detectives and were "non-suggestive." Following Detective Wilson's testimony, the State rested.

¶ 30                              2. *Defendant's Case-in-Chief*

¶ 31         Defendant presented the following evidence.

¶ 32                                 a. Patrick Bostwick

¶ 33    Patrick Bostwick testified he is a patrol officer with the Danville Police Department. Officer Bostwick testified that on November 13, 2016, he arrested defendant at 924 North Franklin Street in Danville. Officer Bostwick testified there were four people standing outside the house when he arrived—two of whom fled west toward an alley—but defendant did not flee and cooperated with him.

¶ 34                               b. Stipulations

¶ 35    The court then read several stipulations into the record. The parties stipulated that Detective Wilson would testify that during an interview on November 4, 2016, Juan Ortiz stated, " 'I tried to stop it [the robbery], but couldn't.' " The parties further stipulated to the presentation of two video clips to perfect impeachment of Ortiz and Cordes, which were admitted into evidence as Defendant's Exhibit Nos. 2 and 3 and played for the jury.

¶ 36                               3. *Verdict*

¶ 37    At the conclusion of trial, the jury found defendant guilty of two counts of armed robbery with a firearm and two counts of vehicular invasion.

¶ 38                          B. Posttrial Motion and Sentencing

¶ 39    On August 25, 2017, defendant filed a motion for a new trial, arguing, *inter alia*, the evidence was insufficient to convict him of armed robbery and vehicular invasion. Paragraph 22 of the motion alleged the following:

> "In addition, after the jury was sworn, counsel for [d]efendant was provided
>
> documentation that would have supported the alibi testimony disclosed to the State
>
> in Defendant's Supplemental #2 Disclosure to the Prosecution. This evidence
>
> would have required additional investigation and witnesses, but this new evidence
>
> would have changed the strategy decision on whether to present an alibi defense

and therefore is newly discovered evidence warranting a new trial. *See* Exhibits A, B, and C."

Though referenced in paragraph 22, no exhibits were attached to the motion.

¶ 40    On October 10, 2017, the trial court conducted a hearing, beginning with defendant's motion for a new trial. At the hearing, defendant's trial counsel explained he neglected to attach Exhibits A, B, and C to the posttrial motion as intended but had furnished copies to the State and the trial court several weeks prior to the hearing. Defendant's trial counsel orally moved to amend the posttrial motion to append the exhibits referenced in paragraph 22, which the court allowed. Exhibit C consisted of a report prepared by Steven Blaine, an investigator with the public defender's office, and stated the following:

"On August 4, 2017 at 1445 hours in preparation for trial on the 7th I called and spoke with Nancy Terrell. She made the following comments. She was at home on October 28, 2016 at around 1600-1630 hours with her three younger children and Honesty and [defendant]. The prior day on the 27th [defendant] had asked her to take him to town, but she didn't have any gas. The next morning (28th) she tried to go to work, but the car only got as far as the local Casey's and died. She had to call off work. A friend took her to get groceries at the old IGA store in Georgetown. She got home around 1400 hours and [defendant] was there. She was either in her trailer or the trailer court. To her knowledge [defendant] did not leave after she got home and is confident that she would have noticed. She doesn't remember saying that the car broke down on the 30th. She explained that Honesty and [defendant] tried the car on the 30th with no results. [Defendant] spoke with Parole Officer, K. Hardy inside the Casey's that day. The car stayed there until it was towed. She will

check the records at work when she goes back Saturday the 5th to confirm she was scheduled October 28th and called off. She will try and get me copies of any documentation on Monday the 7th." Exhibit A consisted of a handwritten note on the letterhead of the Quality Inn located at 383 Lynch Drive in Danville. The note was dated August 8, 2017, and stated, "To whom it may concern: On 10/28/16 Nancy Terrell called in that day due to her car broke down. Thanks, Vanessa Hill, Assistant Manager." Exhibit B appeared to be an employee sign-in sheet from the Quality Inn and showed that Nancy Terrell did not sign in on October 28, 2016.

¶ 41 In ruling on defendant's motion for new trial, the trial court noted the dates on the exhibits and stated,

"It does appear that the information contained in Exhibits A, B—at least A and C, rather, I don't know when B was obtained, was certainly available to *** [d]efendant prior to *** [d]efendant resting his case on August the 9th. It appears that A was—is dated August the 8th, Exhibit C is a memo created by the Public Defender's Office investigator referencing conversations—or a conversation that occurred on August the 4th. So it does not appear that—that this is newly discovered evidence. But even if it could be construed as such it appears that that is more properly the subject of a post-conviction motion as opposed to a motion for new trial."

The court then denied defendant's motion for new trial.

¶ 42 Following the presentation of evidence in aggravation and mitigation and sentencing arguments, the court sentenced defendant to 24 years in prison and ordered him to pay $690.61 in restitution to Cordes, which was a joint and several obligation with Juan Ortiz.

¶ 43　　　　This appeal followed.

¶ 44　　　　　　　　　　　　II. ANALYSIS

¶ 45　　　　On appeal, defendant argues (1) the evidence was insufficient to convict him of armed robbery with a firearm and vehicular invasion beyond a reasonable doubt, (2) the trial court failed to conduct a preliminary *Krankel* inquiry into defense counsel's admission he failed to call alibi witnesses, and (3) the trial court erred in ordering defendant to pay restitution. We affirm defendant's conviction and sentence and remand with directions.

¶ 46　　　　　　　　　　A. Sufficiency of the Evidence

¶ 47　　　　Defendant first argues the State failed to prove defendant guilty of armed robbery with a firearm and unlawful vehicular invasion beyond a reasonable doubt.

¶ 48　　　　　　　　　　　1. *Standard of Review*

¶ 49　　　　When presented with a challenge to the sufficiency of the evidence, the question before this court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis and internal quotation marks omitted.) *People v. Harris*, 2018 IL 121932, ¶ 26, 120 N.E.3d 900. "All reasonable inferences from the evidence must be drawn in favor of the prosecution." *People v. Hardman*, 2017 IL 121453, ¶ 37, 104 N.E.3d 372. Further, we must "not substitute [our] judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of the witnesses." *People v. Gray*, 2017 IL 120958, ¶ 35, 91 N.E.3d 876. "A criminal conviction will not be reversed for insufficient evidence unless the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *Id.* The State bears the burden of proving the essential elements of a crime

beyond a reasonable doubt, and it "may not leave to conjecture or assumption essential elements of the crime." *People v. Laubscher*, 183 Ill. 2d 330, 335-36, 701 N.E.2d 489, 491 (1998).

¶ 50                                    2. *Elements of the Offenses*

¶ 51            To prove defendant guilty of armed robbery with a firearm, the State was required to show that he, or someone for whom he was accountable, "knowingly [took] property *** from the person or presence of another by the use of force or by threatening the imminent use of force" and that he, or someone for whom he was accountable, "carrie[d] on or about his or her person or [was] otherwise armed with a firearm." 720 ILCS 5/18-1(a), 18-2(a)(2) (West 2016).

¶ 52            "A person commits vehicular invasion when he knowingly, by force and without lawful justification, enters or reaches into the interior of a motor vehicle while the motor vehicle is occupied by another person or persons, with the intent to commit a theft or felony therein." *People v. Isunza*, 396 Ill. App. 3d 127, 130, 917 N.E.2d 1079, 1083 (2009) (citing 720 ILCS 5/12-11.1(a) (West 2006)).

¶ 53                                    3. *This Case*

¶ 54            Defendant argues the evidence was insufficient to convict him because (1) Cordes's identification was unreliable, (2) defendant's accomplice's testimony was biased and not credible, and (3) there was no physical evidence connecting defendant to the crime. We disagree.

¶ 55                                    a. Cordes's Identification

¶ 56            In assessing the reliability of a witness's identification of a criminal defendant, Illinois courts are guided by the factors set forth in *Neil v. Biggers*, 409 U.S. 188 (1972). See, *e.g.*, *People v. Slim*, 127 Ill. 2d 302, 307-08, 537 N.E.2d 317, 319 (1989) and *People v. Mister*, 2016 IL App (4th) 130180-B, ¶ 104, 58 N.E.3d 1242. Those factors include the following:

"(1) the witness's opportunity to view the defendant during the offense, (2) the witness's degree of attention at the time of the offense, (3) the accuracy of the witness's prior description of the defendant, (4) the witness's level of certainty at the subsequent identification, and (5) the length of time between the crime and the identification." *Mister*, 2016 IL App (4th) 130180-B, ¶ 104.

¶ 57   Defendant argues Cordes's identification of defendant was unreliable because (1) Cordes's opportunity to observe defendant was limited, (2) Cordes was distracted during the robbery, (3) Cordes's identification was inaccurate because defendant's Illini jacket was never recovered, and (4) one week had passed between the robbery and Cordes's identification. We disagree. First, Cordes testified defendant was only about five feet away from him when defendant approached the passenger's side of his truck, and defendant spent several minutes rifling through Laseter's pockets before fleeing with mobile phones and cash. This gave Cordes ample opportunity to observe defendant in close proximity and during the light of day as the robbery occurred around 4 p.m. Furthermore, we find no evidence in the record, and Cordes did not testify, that he felt "distracted" by defendant's gun; moreover, Cordes testified he felt very confident in his identification. Additionally, the fact police never recovered the Illini jacket defendant allegedly wore during the robbery does not negate the fact Cordes accurately described defendant's height, build, skin tone, hairstyle, and facial hair in making his identification. We agree with the State that the jacket was "merely *part* of [Cordes's] description, not the *basis* of the description." (Emphases added.) Finally, only a week had passed between the date of the robbery and the date of Cordes's photograph identification of defendant. Accordingly, we are not persuaded the last *Biggers* factor weighs in defendant's favor.

¶ 58                    b. Accomplice Testimony

¶ 59    Defendant next argues the evidence was insufficient to convict defendant because Ortiz's testimony was biased and not credible. We disagree.

¶ 60    In support of his argument, defendant cites to several cases for the general principle that accomplice testimony "must be regarded with skepticism and caution." *People v. Wilson*, 66 Ill. 2d 346, 350, 362 N.E.2d 291, 293 (1977); see also *People v. Zaeske*, 67 Ill. App. 2d 115, 121, 213 N.E.2d 577, 580 (1966) ("[W]here *** it appears that the witness has hopes of reward from the prosecution, his testimony should not be accepted unless it carries with it absolute conviction of the truth.") and *People v. Zambrano*, 2016 IL App (3d) 140178, ¶ 27, 64 N.E.3d 639 ("The testimony of accomplices should be viewed with suspicion and accepted only with great caution, especially where the witnesses were promised leniency or where the testimony was induced with a grant of immunity.").

¶ 61    Although we agree with defendant that Ortiz's testimony should be regarded with caution due to his favorable plea deal with the State and acknowledge that Ortiz was impeached by his prior convictions for aggravated unlawful use of a weapon and residential burglary, we disagree that his testimony was "wildly inconsistent" with that of Cordes and rendering his testimony "unreasonable of belief." The only significant inconsistencies between Cordes's and Ortiz's testimony were what Ortiz said or did not say during the robbery and what items were allegedly stolen: Cordes testified Ortiz told him to put his hands up while Ortiz testified he said nothing; Cordes testified they stole cash and mobile phones while Ortiz testified they only stole marijuana. Regardless of what was stolen or what Ortiz said or did not say during the robbery, both witnesses testified to the essential elements of both offenses for which defendant was accused—armed robbery with a firearm and unlawful vehicular invasion. See 720 ILCS 5/18-1(a), 18-2(a)(2) (West 2016); *id.* § 18-6.

¶ 62 Moreover, unlike the circumstances presented in *Zambrano*, 2016 IL App (3d) 140178, ¶ 27, where the defense attorney did not attack an accomplice's credibility based on the State's promise of use immunity, the jury was aware that Ortiz had entered into a plea agreement with the State in exchange for his truthful testimony. It was within the province of the jury to weigh the credibility of the witnesses and we do not find any inconsistencies so "unreasonable, improbable, or unsatisfactory" as to raise a reasonable doubt of defendant's guilt. *Gray*, 2017 IL 120958, ¶ 35; see also *People v. Corral*, 2019 IL App (1st) 171501, ¶ 85, 126 N.E.3d 632 ("Minor inconsistencies in the testimony between witnesses *** may affect the weight of the evidence but do not automatically create a reasonable doubt of guilt.").

¶ 63                                c. Lack of Physical Evidence

¶ 64 Finally, defendant argues the evidence was insufficient because "no physical evidence corroborates the identification or otherwise implicates" defendant. We disagree.

¶ 65 This court has previously held that "[t]he lack of physical evidence in a case does not raise a reasonable doubt where an eyewitness has positively identified the defendant as the perpetrator of the crime." *People v. Reed*, 396 Ill. App. 3d 636, 649, 919 N.E.2d 1106, 1116 (2009). Here, two eyewitnesses—Cordes and Ortiz—positively identified defendant and testified to the essential elements of the crimes. In viewing this evidence in the light most favorable to the State, we cannot say the lack of physical evidence corroborating the eyewitness testimony raises a reasonable doubt as to defendant's guilt.

¶ 66 Accordingly, we find the evidence was sufficient to convict defendant of armed robbery with a firearm and unlawful vehicular invasion beyond a reasonable doubt.

¶ 67                                B. Failure to Conduct a *Krankel* Inquiry

¶ 68 Defendant next argues the trial court failed to conduct a preliminary inquiry pursuant to *Krankel* following defendant's trial counsel's admission he failed to investigate newly discovered potential alibi evidence. We disagree.

¶ 69 When confronted with a defendant's posttrial allegations of ineffective assistance of counsel, our supreme court set out the procedural steps to follow in *People v. Moore*, 207 Ill. 2d 68, 77-78, 797 N.E.2d 631, 637 (2003) (noting the rule that had developed since *Krankel*):

> "New counsel is not automatically required in every case in which a defendant presents a *pro se* posttrial motion alleging ineffective assistance of counsel. Rather, when a defendant presents a *pro se* posttrial claim of ineffective assistance of counsel, the trial court should first examine the factual basis of the defendant's claim. If the trial court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion. However, if the allegations show possible neglect of the case, new counsel should be appointed."

¶ 70 Defendant acknowledges he did not raise a *pro se* allegation of ineffective assistance of counsel. Rather, defendant argues trial counsel's own admission he did not investigate potential alibi witnesses should trigger the trial court's duties under *Krankel*. Defendant acknowledges in his reply brief that since the filing of his opening brief, the Illinois Supreme Court issued an opinion in *People v. Bates*, 2019 IL 124143, ¶ 33, which held that "an attorney can raise the issue of his own ineffectiveness *only* if he does so clearly and at the direction of the defendant." (Emphasis added.) The court further overruled all "cases from our appellate court that hold that trial counsel can raise a claim of ineffective assistance of counsel without direction from the

- 15 -

defendant, including *Williams* [citation], and *Hayes* [citation]." *Id.* The court discussed those cases as follows:

"*Williams*, *Hayes*, and *McGath* are more comparable to the case at hand. In those cases, like in this case, counsel made a claim in argument for a motion for a new trial that the defendant later asserted was counsel's admission of his own ineffectiveness. [Citations.] In those cases, like here, counsel does not explicitly state that he was ineffective. In *Williams* and *Hayes*, the courts held that counsel's statements were sufficient admissions of ineffectiveness such that the trial courts should have conducted *Krankel* hearings. [Citations.] In *McGath*, however, the court held that, because the defendant had failed to raise a *pro se* claim of ineffective assistance, there was no reason for the trial court to conduct a *Krankel* hearing." (Internal quotation marks omitted.) *Id.* ¶ 31 (citing *People v. Williams*, 224 Ill. App. 3d 517, 586 N.E.2d 770 (1992), *People v. Hayes*, 229 Ill. App. 3d 55, 593 N.E.2d 739 (1992), and *People v. McGath*, 2017 IL App (4th) 150608, ¶ 49, 83 N.E.3d 671).

¶ 71        The *Bates* court also determined the facts in *Williams*, *Hayes*, and *McGath* were distinguishable from those presented in *People v. Willis*, 2013 IL App (1st) 110233, 997 N.E.2d 947. *Id.* ¶ 29. In *Willis*, the defendant's trial counsel moved for a new trial based on his own admission he was ineffective for failing to ensure that a material defense witness was available to testify. *Willis*, 2013 IL App (1st) 110233, ¶ 62. However, at the hearing on that motion, the trial court allowed defense counsel to withdraw that allegation because counsel arguing his own ineffectiveness created a conflict of interest. *Id.* Describing the circumstances as "unusual," the

- 16 -

*Willis* court determined the trial court had a duty under *Krankel* to conduct an inquiry into counsel's allegations and subsequent decision to withdraw those allegations. *Id.* ¶¶ 69-72.

¶ 72      Defendant argues the facts in this case are more akin to *Willis* than *Bates*, and therefore this court is required to remand for a preliminary *Krankel* inquiry. We disagree. In defendant's motion for new trial, defendant's trial counsel did not argue that a new trial was warranted based on a claim of his own ineffective assistance; rather, he argued he had obtained newly discovered evidence that was not available at the time of trial but would support a potential alibi defense. Just as in *Williams*, *Hayes*, and *Bates*, defendant's trial counsel "made a claim in argument for a motion for a new trial that [defendant] later asserted was counsel's admission of his own ineffectiveness" and "d[id] not explicitly state that he was ineffective." *Bates*, 2019 IL 124143, ¶ 31. Moreover, the distinguishing factor in *Willis* was—as discussed by the *Bates* court— that after specifically arguing his own ineffectiveness in a motion for new trial, defendant's trial counsel was later allowed to withdraw that allegation. *Willis*, 2013 IL App (1st) 110233, ¶ 62; see also *Bates*, 2019 IL 124143, ¶ 29. Those unusual circumstances are not present in this case.

¶ 73      Here, defendant's trial counsel failed to *clearly* raise a claim of ineffective assistance, but there is also nothing in the record indicating defendant directed his trial counsel to make such a claim. Accordingly, we find the trial court was not required to conduct a preliminary *Krankel* inquiry.

¶ 74                              C. Restitution

¶ 75      Finally, defendant argues the trial court's restitution order must be vacated because (1) the State failed to present evidence of the victim's monetary loss and (2) the court failed to consider defendant's ability to pay and set a payment deadline as required by statute. Defendant concedes he forfeited the issue by failing to object to the restitution order or raise the issue in a

motion to reconsider. He nevertheless requests that we review the issue for plain error. See Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967) (authorizing the reviewing court to review plain errors affecting substantial rights). The State argues it presented sufficient evidence of the victim's monetary loss. However, it concedes the trial court failed to set a payment deadline as required by statute and requests this court remand for that limited purpose.

¶ 76                                    1. *Plain Error Review*

¶ 77        Under the plain-error doctrine, we may consider a forfeited claim when "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565, 870 N.E.2d 403, 410-11 (2007). Defendant bears the burden of persuasion in plain-error review. *People v. Eppinger*, 2013 IL 114121, ¶ 19, 984 N.E.2d 475. "The first step of plain-error review is determining whether any error occurred." *People v. Thompson*, 238 Ill. 2d 598, 613, 939 N.E.2d 403, 413 (2010).

¶ 78                                          2. *This Case*

¶ 79        Defendant argues (1) the State presented no evidence Cordes suffered a specific monetary loss and (2) the trial court failed to consider defendant's ability to pay restitution and set a payment schedule. We discuss each of these issues in turn.

¶ 80        "In general, a trial court's determination on restitution, like other sentencing issues, will not be reversed on appeal absent an abuse of discretion." *People v. Cameron*, 2012 IL App (3d) 110020, ¶ 35, 977 N.E.2d 909. However, the issue of whether the court ordering restitution complied with the restitution statute is a matter of law reviewed *de novo*. See *id.*

- 18 -

¶ 81        Section 5-5-6 of the Unified Code of Corrections (Code) provides that a crime victim is entitled to recover restitution for "the actual out-of-pocket expenses, losses, damages, and injuries suffered by the victim named in the charge" that were proximately caused by the criminal conduct of the defendant or his accomplice. 730 ILCS 5/5-5-6(a), (b) (West 2016); *Cameron*, 2012 IL App (3d) 110020, ¶ 36.

> "Restitution should be determined by using the fair market value of the property at the time the property was damaged or destroyed. [Citation.] Alleged losses which are unsupported by the evidence must not be used as a basis for awarding restitution. [Citation.] The court must determine the actual costs incurred by the victim; a guess is not sufficient. [Citation.] Evidence of value can be found in the PSI [presentence investigation report]." (Internal quotation marks omitted.) *People v. Adame*, 2018 IL App (2d) 150769, ¶ 14, 94 N.E.3d 248.

Section 5-5-6(f) of the Code further provides, "Taking into consideration the ability of the defendant to pay, *** the court shall determine whether restitution shall be paid in a single payment or in installments, and shall fix a period of time not in excess of 5 years, *** not including periods of incarceration, within which payment of restitution is to be paid in full." 730 ILCS 5/5-5-6(f) (West 2016). The court's compliance with section 5-5-6(f) of the Code is mandatory. *People v. White*, 146 Ill. App. 3d 998, 1002-04, 497 N.E.2d 888, 891-92 (1986) (finding the trial court did not comply with the restitution statute when it failed to order a payment deadline).

¶ 82        Here, Cordes testified at trial that during the course of the robbery, defendant's accomplice, Ortiz, stole an iPhone, $50, and his wallet, which contained his driver's license, credit card, and gift cards. Although the State presented no evidence these items were ever recovered, the presentence investigation report (PSI) reflected Cordes requested $690.91 to replace the stolen

iPhone. As stated above, evidence of value may be found in the PSI. Furthermore, defendant never objected to this valuation when given the opportunity. Accordingly, we find the State presented sufficient evidence to support the court's restitution order and decline to review this issue for plain error.

¶ 83    However, we agree with defendant and accept the State's concession that the court erred by failing to set a payment deadline based on defendant's ability to pay. Based on our review of the record, the trial court never indicated orally or in its judgment of conviction the date by which defendant was required to pay restitution. Furthermore, the court's determination of the manner of payment is ambiguous; the court's supplemental sentencing order listed all of the fines, fees, and assessments against defendant—including the restitution amount—and next to the full sum owed by defendant ($1695.61), indicated, "Monthly payment in equal installments." This payment schedule thus reflected an installment schedule of the lump sum, but no specific deadline regarding restitution.

¶ 84    Finding that the trial court erred, we next consider whether, under the second prong of plain-error analysis, the error was "so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *Piatkowski*, 225 Ill. 2d at 565. We accept the State's concession that the trial court's failure to set a payment deadline constituted second-prong plain error "because defendant needs to know when he must satisfy the restitution order, given the potential consequences of him not complying with the order." See 730 ILCS 5/5-5-6(b) (West 2016) ("If a defendant fails to pay restitution in the manner or within the time period specified by the court, the court may enter an order directing the sheriff to seize any real or personal property of a defendant to the extent necessary to satisfy the order of restitution and dispose of the property by public sale."). Moreover, without a firm payment

deadline, Cordes would lack the ability to enforce the restitution order in a delinquency proceeding. See *id.* § 5-5-6(m)(3) ("A restitution order under this Section is a judgment lien in favor of the victim that *** [m]ay be enforced to satisfy any payment that is delinquent under the restitution order by the person in whose favor the order is issued.").

¶ 85        Accordingly, we remand for the limited purpose of allowing the trial court to determine, taking into consideration defendant's ability to pay, a deadline for defendant to satisfy his restitution obligation and, if appropriate, a payment schedule.

¶ 86                                    III. CONCLUSION

¶ 87        For the reasons stated, we affirm the defendant's conviction and sentence and remand with directions to set a restitution payment deadline.

¶ 88        Affirmed and remanded with directions.