2021 IL App (1st) 170501-U

No. 1-17-0501

Order filed March 25, 2021

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14 CR 12525 |
| | ) | |
| JAZMOND HOHL, | ) | Honorable |
| | ) | Frank Zelezinski, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE MARTIN delivered the judgment of the court.
Justices Lampkin and Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The evidence presented at trial was sufficient to prove defendant guilty beyond a reasonable doubt of aggravated discharge of a firearm.

¶ 2    Following a 2017 bench trial, defendant Jazmond Hohl was convicted of aggravated discharge of a firearm in the direction of another person (720 ILCS 5/24-1.2(a)(2) (West 2014)) and sentenced to four years in the Illinois Department of Corrections ("IDOC"). On appeal, Hohl

contends that the evidence presented was insufficient to sustain his conviction because the victim's testimony was inconsistent and uncorroborated. For the reasons that follow, we affirm.[1]

¶ 3                                              JURISDICTION

¶ 4      The trial court sentenced Hohl on February 10, 2017, and on that same date, Hohl filed a notice of appeal. Accordingly, this court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1980, art. VI, §6) and Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013) and Rule 606 (eff. July 1, 2017), governing appeals from a final judgment of conviction in a criminal case.

¶ 5                                              BACKGROUND

¶ 6      Hohl's conviction arose from a shooting that took place in Homewood, Illinois, on June 11, 2014. Following his arrest, Hohl was charged by indictment with three counts of attempted first degree murder (counts I, II, and III), one count of aggravated discharge of a firearm in the direction of another person (count IV), and one count of aggravated discharge of a firearm in the direction of an occupied vehicle (count V).

¶ 7      At trial, Jireh Parnell testified that he and Hohl, whom he identified in court, went to the same high school from 2007 to 2011. During high school, they played basketball together for close to a year. Since graduating, Parnell saw Hohl in the neighborhood every week or two. They did not have "the best relationship."

¶ 8      On June 11, 2014, Parnell was living with his parents in Homewood. Around 10:19 p.m., Parnell was sitting in his parked vehicle on the street in front of the home, having a conversation

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

with his friend Tyler on speakerphone. At that time, Parnell noticed a familiar looking vehicle approaching from the opposite direction. Parnell was able to identify the vehicle as a Land Rover and had seen Hohl driving or riding in that same vehicle approximately 10 other times. The Land Rover passed Parnell's vehicle and stopped. Parnell turned, looked out his window, and opened his door. He saw "maybe four" people in the Land Rover, which was about 10 feet away. The area was lit by street lights and nothing obstructed Parnell's view.

¶ 9    The vehicle's back window rolled down and Hohl stuck his head out. Hohl then got out of the vehicle and opened fire. Specifically, Parnell saw "flashes" coming from Hohl's hand. Parnell closed his door and drove off. As Parnell was driving away, he heard about three more gunshots. No one else exited the Land Rover.

¶ 10    Parnell drove around the block and returned to his parents' house about three minutes after the shooting. His parents were outside and "the police [were] outside already." Parnell told the police Hohl had shot at him. In court, Parnell identified several photographs depicting the damage to his vehicle, including to the trunk. He testified that the bullet holes that were depicted in the photographs did not exist before the shooting.

¶ 11    On cross-examination, Parnell admitted that he had been in several physical fights with Hohl in the past and there had been "bad blood" between them throughout high school and afterwards. He stated that he no longer had "a problem" with Hohl. However, he agreed that on the night in question, he "knew that if [he] saw [Hohl], there might be a problem."

¶ 12    Parnell clarified that Hohl was seated in the back seat on the driver's side of the Land Rover. Parnell agreed that during the investigation of the case, he gave a statement to an Assistant State's Attorney (ASA). He further agreed that after the statement was reduced to writing, he was

given the opportunity to review and make changes to it, and that he signed it. Parnell denied telling the ASA that Hohl was the Land Rover's driver and stuck his head out of the driver's window. Parnell testified, "I stated that he was out the window in the back seat. I don't know what error they made, but I didn't say that." Parnell also denied telling the ASA that the police arrived on the scene after he returned from driving around the block, even though his signed statement reflected that order of events. Parnell acknowledged that he gave a statement to the police, but denied telling them that a second person exited the Land Rover.

¶ 13    Parnell testified that he recognized the other three people in the Land Rover, but did not know their names. He did not remember whether he had viewed a "photo lineup of those other three." He explained that the Land Rover drove past his vehicle, stopped, backed up, and stopped again. He stated that when the Land Rover stopped the second time, it was one car length from his vehicle, but also that it was "directly across" from his vehicle. Finally, Parnell agreed that although he was on speakerphone with a friend named Tyler the "whole time," he did not tell the police or the ASA about Tyler.

¶ 14    On redirect, Parnell agreed that the police did not ask him what he was doing in his vehicle or whether he was on the phone.

¶ 15    Homewood police detective Tom Johnson testified that he investigated the shooting. Upon arriving at the scene, he spoke with Homewood police officer Nathan Bruni, who was the initial responding officer. Bruni told him that Parnell had identified Hohl as the shooter. Johnson processed Parnell's vehicle and the scene. He observed five spent shell casings in the middle of the street, a bullet hole in the vehicle's rear bumper, and a bullet graze to the top of the trunk and the back window. The spent shell casings were located in an area that would have been to the rear

of Parnell's vehicle. Johnson stated that the location of the graze "indicate[d] a shot from the rear of [Parnell's] vehicle heading towards the vehicle and striking the trunk and then going up towards the window." Johnson also found a plastic piece of bumper in the street that matched Parnell's vehicle. Johnson identified photographs of the shell casings, all of which were .380 caliber.

¶ 16    On cross-examination, Johnson acknowledged that his investigation found no eyewitnesses to the shooting beyond Parnell. Although there had been 911 calls from the surrounding area, all callers only reported hearing gunshots. No fingerprint or DNA evidence was recovered during the course of the investigation. Although Johnson's investigation revealed that Hohl had a Land Rover, Johnson never obtained a search warrant for Hohl's vehice or any of Hohl's addresses.

¶ 17    Hohl made a motion for a directed finding, which the trial court denied.

¶ 18    The parties stipulated that if called as a witness, Officer Bruni would have testified that while he was canvassing the area, Parnell arrived and reported that he had been shot at in front of his house by Hohl. Bruni would have further testified that Parnell stated, "[Hohl] exited the rear driver's side of his vehicle, another unknown subject exited the vehicle along with [Hohl]."

¶ 19    The parties also stipulated that if called as a witness, ASA Amari Dawson would have testified that she took a statement from Parnell on June 24, 2014. Within the statement, Parnell attested Hohl stuck his head out of the driver's window. Parnell also stated that when he arrived back at his house after driving around the block, Hohl was gone and the police arrived on the scene shortly thereafter.

¶ 20    In closing, the State argued that Parnell testified credibly and that the only impeachment related to which window of the Land Rover Hohl stuck his head out of and whether the police were already at Parnell's house when he returned from driving around the block. Defense counsel

countered that Parnell was incredible because he was impeached with the physical evidence regarding the location of the shooter, Hohl's position within the Land Rover, and whether a second person got out of the Land Rover. Defense counsel also argued that Parnell had a motive to falsely accuse Hohl and that he withheld evidence when he did not tell the police or the ASA about being on the phone with Tyler at the time of the shooting. In rebuttal, the State argued that any impeachment was negligible, that the defense's motive argument made "absolutely no sense," and that Parnell did not tell anyone about Tyler because no one asked.

¶ 21    The trial court found Hohl not guilty on the three counts of attempted first degree murder but guilty on both counts of aggravated discharge of a firearm. The court observed that "the entire case is based upon the testimony of Mr. Parnell," who immediately identified Hohl and accurately described his Land Rover. The court stated that it believed Parnell's testimony and found that the physical evidence was consistent with Parnell's account of the shooting. With regard to impeachment, the court stated, "those matters, if they are any impeachment whatsoever, they're collateral impeachment regarding what happened" and did not "shatter" Parnell's testimony. The court rejected the defense's motive argument, reasoning that "bad blood goes both directions."

¶ 22    Hohl filed a posttrial motion, challenging the sufficiency of the evidence to convict. He argued, *inter alia*, that Parnell was impeached on multiple occasions, that his testimony was inconsistent with the physical evidence, that his failure to tell the police or the ASA about Tyler was "a strong reason to doubt" his credibility, and that he had a motive to falsely identify Hohl.

¶ 23    In denying Hohl's posttrial motion, the court stated:

> "I heard the testimony, and there were some elements of impeachment regarding the victim regarding when police officers showed up. But on the flip side of that, a lot of

this impeachment was simply collateral. It's not extensive. One is about which police officers were there. He said he got back before police officers were there. There was in fact one police officer there, but a second police officer, being the detective, came after the fact. So I'm not even going to deal with that issue regarding impeachment. It is collateral."

The court noted that while Parnell testified he and Hohl were not on the best of terms, motive could "cut both ways" in this case. The court reiterated that it believed Parnell and determined that its guilty finding was appropriate based on the evidence presented.

¶ 24    At sentencing, the trial court merged count V into count IV and imposed a sentence of four years in IDOC.

¶ 25                                    ANALYSIS

¶ 26    On appeal, Hohl challenges the sufficiency of the evidence to sustain his conviction. When reviewing the sufficiency of the evidence, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). The credibility of the witnesses, the weight to be given their testimony, and the resolution of any conflicts in the evidence are within the province of the trier of fact, and a reviewing court will not substitute its judgment for that of the trier of fact on these matters. *People v. Brooks*, 187 Ill. 2d 91, 131 (1999). The testimony of a single witness, if positive and credible, is sufficient to convict. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). A reviewing court will not reverse a conviction simply because the defendant claims that a witness was not credible. *Id.* Rather, reversal is justified only where the evidence is "so unsatisfactory, improbable or

implausible" that it raises a reasonable doubt as to the defendant's guilt. *People v. Slim*, 127 Ill. 2d 302, 307 (1989).

¶ 27     In this case, Hohl was convicted of aggravated discharge of a firearm in the direction of another person. In order to sustain this conviction, the State was required to prove beyond a reasonable doubt that Hohl "knowingly or intentionally *** [d]ischarge[d] a firearm in the direction of another person ***." 720 ILCS 5/24-1.2(a)(2) (West 2014).

¶ 28     After reviewing the evidence in the light most favorable to the State, we find that a rational trier of fact could conclude that Hohl committed the offense of aggravated discharge of a firearm in the direction of Parnell. At trial, Parnell testified that while he was parked outside of his house, he saw Hohl, whom he knew from high school and the neighborhood, open fire on him. Then, as Parnell was driving away, he heard about three more gunshots. Parnell immediately and repeatedly named Hohl as the shooter. While the testimony of a single witness, if positive and credible, is sufficient to convict (*Siguenza-Brito*, 235 Ill. 2d at 228), the discovery of two bullet holes in the rear of Parnell's vehicle and five spent cartridge casings on the street corroborated his account of the shooting. This evidence and the reasonable inferences therefrom was sufficient to sustain Hohl's conviction. Stated differently, the evidence presented is not so unsatisfactory, improbable, or implausible such that it raises a reasonable doubt as to Hohl's guilt.

¶ 29     Hohl nevertheless contends that his conviction must be reversed because the only evidence of his guilt came from the testimony of an impeached witness with a motive to lie. Hohl observes that "this case was about Jireh Parnell's credibility" and asserts that Parnell's biased, inconsistent, and uncorroborated testimony was insufficient to support a guilty finding. Hohl argues that Parnell was incredible for three reasons. First, he maintains that Parnell had a motive to falsely accuse

Hohl where he admitted to "feuding" with Hohl before the shooting. Second, Hohl asserts that Parnell was impeached with respect to several important details about the offense. Specifically, Hohl argues: (1) Parnell testified the Land Rover was "directly across the street" when the gunman opened fire, but the bullet casings were found behind Parnell's parking spot and the bullets hit his bumper and trunk; (2) Parnell's trial testimony that the police were already on the scene was contradicted by his statement to the ASA that the police arrived after he circled the block; and (3) Parnell's testimony that only Hohl, who was seated in the back seat, exited the Land Rover was contradicted by his prior statements that two people exited the Land Rover and Hohl was the driver. Third, Hohl claims that Parnell concealed the identity of a material witness when speaking with investigating authorities. He asserts that Parnell's failure to mention Tyler when reporting the salient details of the crime provides evidence that he was not fully truthful at trial or when speaking to the police.

¶ 30     Hohl's arguments involve matters of credibility that are for the trial court to resolve in its role as trier of fact. *People v. Tenney*, 205 Ill. 2d 411, 428 (2002). As mentioned, it is the trier of fact who assesses the credibility of witnesses, the weight to be given their testimony, and the inferences to be drawn from the evidence, and who resolves conflicts or inconsistencies in the evidence. *Id.*; *Brooks*, 187 Ill. 2d at 131.

¶ 31     Here, the trial court heard Parnell's testimony and was well aware both of Hohl's position that Parnell was incredible and of the complained-of inconsistencies in Parnell's testimony. In closing arguments, defense counsel asserted that Parnell could not be telling the truth because Parnell placed the Land Rover "directly across" the street, but physical evidence established that bullets struck Parnell's vehicle from behind. Defense counsel stressed that Parnell had been

impeached with prior statements regarding where Hohl was seated in the Land Rover and whether a second person exited the Land Rover. The defense further asserted that Parnell's history of fighting with Hohl gave Parnell a motive to falsely accuse Hohl. Lastly, defense counsel argued that Parnell withheld evidence when he did not report to the police or the ASA that he was on speakerphone with Tyler when the shooting occurred. Counsel repeated most of those arguments in the written posttrial motion, adding that Parnell had been impeached with a prior inconsistent statement about when the police arrived on the scene. While arguing the posttrial motion, defense counsel highlighted the majority of the aforementioned impeachment.

¶ 32    Despite these arguments, the trial court found Hohl guilty, noting that it believed Parnell's testimony, that any impeachment was collateral and did not destroy Parnell's credibility, and that Hohl's motive argument failed because "bad blood goes both directions." Then, at the hearing on the posttrial motion, the trial court specifically addressed Parnell's credibility, repeating that it believed Parnell, that any impeachment was collateral and not extensive, and the fact Parnell and Hohl had fought in the past "cut both ways." The trial court found Parnell credible notwithstanding the concerns Hohl is now raising on appeal. We will not substitute our judgment for that of the trial court on this question of credibility. *Brooks*, 187 Ill. 2d at 131.

¶ 33    As a final matter, we find that the cases Hohl relies on—*People v. Herman*, 407 Ill. App. 3d 688 (2011) and *People v. Smith*, 185 Ill. 2d 532 (1999)—are distinguishable, where the convictions in both cases were overturned based on insufficient evidence.

¶ 34    In *Herman*, the complainant testified that she was raped by a Chicago police officer. 407 Ill. App. 3d at 704-05. She admitted that she smoked six to eight rocks of cocaine before the alleged incident. *Id.* She changed her timeline of events numerous times before and during trial, in some

cases stating that the encounter occurred at a time when the defendant could not have been at her apartment. *Id.* at 705-06. In our view, unlike the complainant in *Herman*, Parnell's testimony in the instant case was not so "fraught with inconsistencies and contradictions" that it was "impossible for any fact finder reasonably to accept any part of it." *Id.* at 705.

¶ 35    In *Smith*, the State's sole eyewitness contended that a shooting, which resulted in the victim's death, occurred when the defendant and the victim were alone together. 185 Ill. 2d at 534. However, at least three other witnesses testified that the defendant was always with them—up to and including the time of the shooting. *Id.* at 543. The eyewitness made an out-of-court admission that she used drugs every day, and she did not come forward until her sister was being detained on suspicion of being involved. *Id.* In addition, her sister's boyfriend was an "alternative suspect" in the murder. *Id.* Our supreme court concluded that "given the serious inconsistencies in, and the repeated impeachment of, [the eyewitness's] testimony, we find that no reasonable trier of fact could have found her testimony credible." *Id.* at 545. We find *Smith* distinguishable where the nature of the evidence presented in *Smith* is dissimilar to the evidence in the instant case.

¶ 36    We find that the evidence supporting Hohl's conviction could reasonably be accepted by the trial court, who saw and heard Parnell testify. Having heard the evidence, the trial court was convinced of Hohl's guilt beyond a reasonable doubt and explained that any impeachment of his testimony dealt with collateral matters and not his identification of Hohl as the shooter. After reviewing the evidence in the light most favorable to the prosecution, which we must, we conclude that the evidence was not "so unsatisfactory, improbable or implausible" to raise a reasonable doubt as to Hohl's guilt. *Slim*, 127 Ill. 2d at 307. Accordingly, Hohl's challenge to the sufficiency of the evidence fails.

¶ 37     For the reasons explained above, we affirm the judgment of the circuit court.

¶ 38     Affirmed.