**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230311-U

Order filed December 31, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-23-0311<br>Circuit No. 22-MT-4484 |
| JAIME CRESPO IV, | ) ) ) | Honorable<br>Jill Otte, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE McDADE delivered the judgment of the court.
Justices Holdridge and Peterson concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  There was sufficient evidence to convict defendant.

¶ 2    Defendant, Jaime Crespo IV, appeals his convictions, arguing the State failed to prove him guilty beyond a reasonable doubt. We affirm.

¶ 3    I. BACKGROUND

¶ 4    Defendant was charged with, *inter alia*, leaving the scene of an accident involving damage to an attended vehicle (625 ILCS 5/11-402(a) (West 2022)), failing to render aid or

provide information after an accident (*id.* § 11-403), failing to report an accident to police authority (*id.* § 11-407(a)), and driving too fast for conditions or failing to reduce speed to avoid an accident (*id.* § 11-601(a)) related to a March 26, 2022, vehicle accident. The matter proceeded to a bench trial on May 9, 2023.

¶ 5　　　　Michelle Barileau testified that on March 26, 2022, at approximately 2 p.m., she was driving on Interstate 88 and exited onto Highway 59. Barileau was stopped behind several vehicles at the top of the ramp. As the vehicles in front of her began to move forward, Barileau was rear-ended by a maroon sports utility vehicle (SUV). Barileau exited her car and saw the SUV drive away. Barileau testified she had a clear, unobstructed view of the driver who "[p]ulled down their window and peeked their head out the window." Barileau made an in-court identification of defendant as the driver of the SUV. Following the accident, Barileau described the driver of the SUV as a "Mexican guy with a [flat bill] hat on," with "darker skin[ ]." Barileau testified she was "concentrating on the license plate as much as [she] could," following the accident. The following exchange then occurred between defense counsel and Barileau:

"Q. And then the police asked you if you thought the driver was young or old?

A. It was two years ago. I don't remember that.

\* \* \*

Q. You told the police that the driver that hit you was young?

A. Okay.

Q. \*\*\* Was that a yes or no?

A. Yes.

Q. Okay. You told the police that you would say the driver is not old at all?

A. Yes.

Q. And you identified the defendant earlier in court?

A. Yes.

Q. And you would sit here today and say that the defendant does not look old at all?

A. He doesn't look old to me.

Q. He looks young?

A. I mean, he doesn't look young, but he doesn't look [ ]old."

No further questions were asked regarding Barileau's previous description of the age of the driver of the SUV, and no other evidence was introduced regarding Barileau's initial description. At the time of the offense, defendant was 43 years old; Barileau was roughly 47 years old.

¶ 6        Dash camera footage from the vehicle behind the SUV was admitted into evidence. The footage showed a maroon SUV with a readable license plate stopped on the exit ramp behind a line of other vehicles. The SUV had a skull decal in the middle of the tailgate. After the light turned green, the SUV drove forward several feet before stopping. The SUV then drove forward again and struck the silver car in front of it, and drove in reverse before speeding off to the right side of the silver car and leaving the scene. The driver of the silver car exited her vehicle and watched the SUV as it drove past.

¶ 7        Illinois State Police Trooper John McDonough testified he was dispatched to the accident. He spoke to two drivers at the scene, and was informed the SUV had caused the crash. At some point during the course of his investigation, McDonough learned that the SUV was a

Chevy Tahoe. When McDonough ran the license plate number from the video, it "came back to a BMW," registered to Nicholas Thomas. He prepared a police report, which included all the foregoing information.

¶ 8　　Sometime around April 28, 2022, McDonough received information that a vehicle matching the description of the SUV involved in the accident was located outside of defendant's body shop. McDonough could not remember who provided the information, only that the individual was not present at the time of the accident. When McDonough arrived, he found a maroon SUV with a skull decal in the middle of the tailgate with damage to its front end. McDonough spoke to defendant who claimed to be the owner of the SUV. Defendant stated he had owned it for several months. Defendant told McDonough the SUV had not moved from his car lot and defendant had not driven it. McDonough testified the SUV in defendant's car lot was a Chevy Tahoe with no license plate on it but failed to include that information in the report that he prepared after his visit to the body shop.

¶ 9　　Defendant testified he had never owned or driven a Chevy Tahoe. He did own a GMC Yukon, which he had purchased on July 27, 2021. An advertisement for the GMC Yukon of uncertain origin and highlighting damage to its front end was admitted into evidence. The State recalled McDonough, who was shown the advertisement for the GMC Yukon. McDonough did not know whether the SUV in the advertisement was the same one he saw on defendant's car lot.

¶ 10　　The court found defendant guilty. Defendant was sentenced to one year of court supervision and 30 hours of community service.

¶ 11　　　　　　　　　　　　　　II. ANALYSIS

¶ 12　　On appeal, defendant argues the State failed to prove him guilty beyond a reasonable doubt. Specifically, defendant argues that the evidence was insufficient to prove that he was the

4

driver of the SUV, as Barileau's identification of defendant was incredible, and the circumstantial evidence was lacking. When reviewing a challenge to the sufficiency of the evidence, we review the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found defendant guilty beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). We give the State the benefit of all reasonable inferences. *People v. Wheeler*, 226 Ill. 2d 92, 116 (2007). A conviction will only be reversed "where the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of defendant's guilt." *Id.* at 115. The trier of fact is responsible for assessing the credibility of the witnesses, assigning the appropriate weight to testimony, and resolving discrepancies in the evidence. *People v. Evans*, 209 Ill. 2d 194, 211 (2004). "A reviewing court will not overturn a trial court's judgment merely because it may have weighed the evidence differently." *People v. Torruella*, 2015 IL App (2d) 141001, ¶ 33.

¶ 13        Defendant argues the State failed to prove him guilty beyond a reasonable doubt because Barileau's identification was not credible. In determining whether an identification is credible, courts look to the five factors set out in *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972):

> "(1) the opportunity the victim had to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the victim at the identification confrontation; and (5) the length of time between the crime and the identification confrontation." *People v. Slim*, 127 Ill. 2d 302, 308 (1989).

On review, we must determine whether any rational trier of fact could have found Barileau's identification credible applying the *Biggers* factors. See *In re A.A.*, 2023 IL App (1st) 221538, ¶ 19.

¶ 14    First, while Barileau's time to view the driver was brief, she had a clear and unobstructed view of the driver's face during that time. The SUV's window was lowered, and the driver turned his head to look at the accident while Barileau was standing only a few feet away. Second, the evidence presented showed that Barileau took the time to look at the driver while he was visible, turning her attention to memorizing the license plate only once the driver was no longer visible. Nothing in the testimony or the video evidence indicated that her attention was negatively affected by the stressful situation.

¶ 15    Third, Barileau identified the driver as "a Mexican guy with a [flat bill] hat on." Defendant argues Barileau provided a prior inconsistent description when she told the police the driver was young. However, it is unclear how she described the driver's age to police following the accident. When asked by defense counsel, "You told the police that the driver that hit you was young[,]" Barileau responded, "Okay." Counsel then said, "You told the police that you would say the driver is not old at all?" To which Barileau said, "Yes." Barileau then stated that defendant did not look old or young. As defendant was 43 years old at the time of the offense, Barileau's identification of defendant—not young but not old—seems like an apt description. Moreover, minor discrepancies in the initial description generally only affect the weight to be given the identification testimony. See, *e.g.*, *People v. Chatman*, 32 Ill. App. 3d 506, 510 (1975) (finding that a discrepancy of 60 to 65 pounds, coupled with discrepancies regarding the offender's height and age, did not destroy the credibility of the eyewitness); *People v. Rogers*, 32 Ill. App. 3d 788, 790 (1975) (finding a witness's failure to notice a thin goatee, description of glasses as dark-rimmed, rather than wire-rimmed, and a coat as dark brown, whereas other witnesses described it as light brown, did not raise reasonable doubt). The "general description" given by Barileau was sufficient to support an in-court identification. See *Slim*, 127 Ill. 2d at 309.

6

¶ 16        Fourth, Barileau identified defendant as the driver and did not waiver from that position throughout the trial. Fifth, even though over a year lapsed between the accident and Barileau's in-court identification, that does not render the identification unreliable *per se*, and instead was just one of the factors the court was in the best position to weigh. See *People v. Holmes*, 141 Ill. 2d 204, 242 (1990) (finding an 18-month lapse between the offense and identification had "no significance" in the court's determination). Viewing the *Biggers* factors in the light most favorable to the State, we believe a reasonable trier of fact could have found Barileau's in-court identification credible.

¶ 17        Defendant also argues the circumstantial evidence presented by the State failed to prove beyond a reasonable doubt that defendant drove the SUV involved in the accident. We note that the testimony of a single witness, if positive and credible, is sufficient to sustain a conviction. *Slim*, 127 Ill. 2d at 307. Therefore, as we have determined that the trial court's finding of credibility regarding Barileau's identification of defendant as the driver of the SUV that struck her was reasonable, the evidence was sufficient to convict. Moreover, Barileau's testimony and identification were further corroborated by video footage showing a maroon SUV with a skull decal in the middle of the tailgate strike Barileau's car before driving off, McDonough's discovery of a maroon SUV with the skull decal in defendant's car lot, and defendant's admission to owning the SUV. Reviewing this evidence in the light most favorable to the State, we believe a rational finder of fact could have found defendant guilty beyond a reasonable doubt.

¶ 18                                III. CONCLUSION

¶ 19        The judgment of the circuit court of Du Page County is affirmed.

¶ 20        Affirmed.