2021 IL App (2d) 200680-U
No. 2-20-0680
Order filed August 19, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 09-CF-663 |
| ESTEBAN ZARAGOZA, | ) ) | Honorable James C. Hallock, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the judgment of the court.
Presiding Justice Bridges and Justice Hutchinson concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Police officers' in-court identifications of defendant as the seller in a controlled drug transaction were reliable under the multi-factor test applied to identification testimony.  The trial court could reasonably find that (1) the officers had adequate light to see defendant (even though it was dusk), (2) the officers paid close attention to defendant during the transaction, (3) the officer who previously identified defendant (in a photo array) did not hesitate in the identification, and (4) the four months that had passed since the transaction did not negatively impact the officer's initial identification.

¶ 2    Following a bench trial, defendant, Esteban Zaragoza, was convicted of the unlawful

delivery of a controlled substance within 1000 feet of a school (720 ILCS 570/407(b)(1) (West

2008)) and sentenced to six years' imprisonment. He appeals, contending that he was not proved guilty beyond a reasonable doubt. We affirm.

¶ 3                                        I. BACKGROUND

¶ 4      At trial, Elgin police officer Jason Morales testified that, on June 17, 2008, he participated in the investigation of a person known as "Esteban." He called a phone number he received from an informant and told the person who answered that he wanted to buy a "ball" of cocaine. The person responded that it would cost $150. They agreed to meet in a Walgreens parking lot. Morales then attended a briefing with other officers, where he received $150 in prerecorded funds.

¶ 5      Morales drove to the parking lot in an undercover vehicle and parked. Asked about the light conditions in the parking lot, Morales answered, "There was still daylight; dusk I would say." Morales could not recall if there was artificial lighting in the parking lot. According to Morales' report, he arrived at 9:37 p.m.

¶ 6      A few minutes later, someone approached his car. Morales identified this man in court as defendant. When defendant spoke, Morales recognized his voice as the person he had spoken to on the phone earlier. Defendant acknowledged that he was "Esteban." Morales was in the driver's seat and defendant leaned into the car through the front passenger-side window. He handed Morales a bag containing a white powdery substance and Morales gave him $150. Defendant told Morales to call him if he needed more. He was at the car for a "couple minutes."

¶ 7      Detective Craig Tucker was a surveillance officer during the undercover buy. After the initial briefing, he parked in the Walgreens lot, with a "full view" of the undercover vehicle. Tucker saw a man wearing a tank top arrive on a motorcycle and walk around outside before Morales arrived. The man approached the passenger's side of Morales' vehicle and leaned inside

for a minute or two. Then, he got back on the motorcycle and left the area. Tucker identified the man as defendant.

¶ 8     Tucker followed the motorcycle for 10 to 15 minutes. Finally, he saw it turn into a driveway but, because of the darkness, he could not see which driveway. Later, it was learned that the motorcycle was registered to Rosa Vazquez.

¶ 9     In October 2008, Morales was shown a photo lineup, in which he circled a picture of the person who sold him cocaine. In March 2009, Morales met with defendant at the police station. Morales testified that he gave defendant *Miranda* warnings (see *Miranda v. Arizona*, 384 U.S. 436 (1966)), although Morales could not produce a copy of the form. According to Morales, defendant said that he recognized Morales from the Walgreens parking lot and remembered selling him cocaine. Later, Morales measured the distance from the location of the transaction to Ellis Middle School. The distance was 787 feet.

¶ 10    Sergeant Frank Trost was the "case agent" in investigating a person known as "Esteban." He provided Morales with the prerecorded funds and, after the transaction, took the drugs from him. However, the police did not immediately arrest the seller, because they "were looking to see first off if [they] could get a better identification on him and possibly purchase more narcotics [from him] in the future."

¶ 11    In October 2008, Trost prepared a photo lineup for Morales that included defendant's picture. Morales made a marking on the lineup. The parties stipulated that the substance defendant sold Morales weighed 3.1 grams and contained cocaine.

¶ 12    Despite some reservations about the amount of time elapsed between the sale, Morales' identification, and defendant's arrest, the trial court found defendant guilty. The court denied defendant's posttrial motion and sentenced him to six years' imprisonment.

2021 IL App (2d) 200680-U

¶ 13    Defendant filed a postconviction petition, alleging that trial counsel was ineffective for failing to file a notice of appeal.  The trial court denied the petition.  We reversed and remanded "solely to allow the clerk to file a late notice of appeal."  *People v. Zaragoza*, 2019 IL App (2d) 170269-U, ¶ 36.  This appeal followed.

¶ 14                                      II. ANALYSIS

¶ 15    Defendant contends that he was not proved guilty beyond a reasonable doubt.  He maintains that the identifications by Morales and Tucker were unreliable given that they viewed the seller for only a short time in poor lighting conditions and did not identify him until months after the transaction.  Defendant further contends that (1) his alleged confession as described by Morales consisted of only a short, vague, unrecorded statement, (2) the police did virtually no follow-up investigation, and (3) given all these shortcomings in the evidence, the State failed to prove beyond a reasonable doubt that defendant was the man who sold cocaine to Morales.

¶ 16    When a defendant challenges on appeal the sufficiency of the evidence to sustain a conviction, we view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  *People v. Casler*, 2020 IL 125117, ¶ 60.  In a bench trial, the trial judge decides the credibility of the witnesses, weighs the evidence and draws reasonable inferences, and resolves any conflicts in the evidence.  *People v. Slim*, 127 Ill. 2d 302, 307 (1989).  A single witness's identification is sufficient to sustain a conviction if the witness viewed the accused under circumstances permitting an identification.  *Id.*

¶ 17    In assessing identification testimony, our courts generally use the test set out in *Neil v. Biggers*, 409 U.S. 188 (1972).  There, the United States Supreme Court held that relevant circumstances in evaluating an identification include: (1) the opportunity the victim had to view

the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the victim at the identification confrontation; and (5) the length of time between the crime and the identification confrontation. *Slim*, 127 Ill. 2d at 307-08 (citing *Neil*, 409 U.S. at 200).

¶ 18    Defendant concludes that three of the factors favor him while the remaining two are at worst neutral. We disagree.

¶ 19    Defendant contends that the first *Neil* factor favors him because Morales and Tucker saw him for only one or two minutes. However, this can be a substantial amount of time to focus on one person. Other courts have found identifications reliable where the witness saw the defendant for a much shorter time. See *People v. Herrett*, 137 Ill. 2d 195, 200 (1990) (witness saw defendant's face for "a few seconds" in a dimly lit pawn shop); *People v. Aguilar*, 396 Ill. App. 3d 43, 57 (2009) (witness observed shooting that lasted several seconds); *People v. Ramos*, 339 Ill. App. 3d 891, 902 (2003) (witness saw defendant for three or four seconds); *People v. Negron*, 297 Ill. App. 3d 519, 530 (1998) (witnesses saw their assailants for only "several seconds"). One to two minutes is more than adequate time to make an identification.

¶ 20    Defendant asserts that "a brief, fleeting encounter can lead to a subsequent misidentification" and cites *People v. Watkins*, 46 Ill. 2d 273, 277 (1970) (citing *Simmons v. United States*, 390 U.S. 377 (1968)). There, the court found sufficiently reliable a police officer's identification of the man who shot him following a brief encounter in an alley. Thus, the facts of *Watkins* actually favor the State.

¶ 21    Also, under the first factor, defendant contends that the lighting at the scene was insufficient for either officer to make a reliable identification. Morales testified that it was "dusk" when the transaction occurred and that there "was still daylight." Defendant notes that Morales'

report states that he arrived at the parking lot at 9:37 p.m. Defendant further observes that, on "June 17, 2008, sunset in Elgin was at 8:31 p.m. and civil twilight ended at 9:05 p.m." Defendant defines "civil twilight" as the time when artificial lighting is generally not required to carry out most outdoor activities and argues that, because the transaction occurred more than a half hour after civil twilight ended, it must have been too dark for the officers to see defendant's face.

¶ 22    This argument is pure speculation. Both officers testified without contradiction that they could identify defendant. Whether it is possible to carry on outdoor activities without artificial light has nothing to do with whether Morales could identify someone leaning into his car. The transaction occurred in the parking lot of a retail store and, although Morales could not remember whether there was artificial lighting in the parking lot, artificial lighting was likely present somewhere in the vicinity.

¶ 23    Defendant argues that the second *Neil* factor, the witnesses' degree of attention, also favors him. He reasons that "neither witness testified to paying a particularly high degree of attention." However, Morales testified that he called defendant specifically to arrange a controlled drug purchase, presumably to identify and prosecute the seller. Tucker testified that he was the surveillance officer for the transaction. Based on this circumstantial evidence, the trial court could reasonably conclude that both officers paid close attention during the transaction.

¶ 24    Defendant points, however, to the fact that neither officer testified about any details of the seller's clothing (Tucker did not know the color of the seller's tank top) or facial features. As defendant notes in conjunction with the third factor, it appears that Morales was not asked to describe the seller before Morales' initial identification. Nor, apparently, was Tucker asked to describe the seller before his in-court identification. However, a witness is not required to distinguish individual and separate features of a suspect in making an identification. Rather, a

witness's identification can be sufficient even though the witness gives only a general description based on the total impression that the accused's appearance made. *Slim*, 127 Ill. 2d at 308-09. Discrepancies and omissions as to physical characteristics are not fatal, but simply affect the weight given to identification testimony. *Id.* at 308.

¶ 25    The parties apparently agree that because neither officer gave a previous description of defendant, the third factor is neutral. Defendant argues that the fourth factor is neutral because there was no evidence of the certainty of Morales' identification. Defendant appears to question whether this factor is appropriate because, according to defendant, there is no correlation between a witness's degree of confidence and the accuracy of the identification. See *Newsome v. McCabe*, 319 F.3d 301, 305 (7th Cir. 2003) ("[P]sychological research has established that the witness's faith is equally strong whether or not the identification is correct."). Regardless, the factor remains valid in the case law and courts continue to evaluate identifications according to their level of certainty. See, *e.g.*, *People v. Piatkowski*, 225 Ill. 2d 551, 569-70 (2007) ("Even though neither witness testified as to his or her level of certainty, both made unequivocal identifications of defendant, identifying him in a photo array, a lineup and again at trial. Additionally, neither witness ever wavered from those identifications."). There was no evidence that Morales hesitated in his prior identification of defendant as the seller. Thus, to the extent this factor is present here, it appears to slightly favor the State.

¶ 26    Noting that Morales initially identified defendant four months after the sale, defendant argues that the fifth factor, the length of time between the crime and the identification, strongly favors the defense. However, this one factor is not dispositive. In *Neil*, the Court found that a seven-month gap between the crime and the victim's identification of the defendant did not undermine the identification, given that the victim had not identified anyone else in some previous

lineups and showups. *Neil*, 409 U.S. at 201. Here, there was no evidence that the four-month delay adversely affected Morales's ability to identify the seller. Considering the totality of the circumstances, the trial court did not err in finding the identifications reliable.

¶ 27 Defendant lists "several other reasons why the identifications should be viewed with suspicion." He complains that Morales had never interacted with defendant before the transaction in question, arguing that "[e]yewitness identification of a person whom the witness had never seen before the crime or other incident presents a substantial risk of misidentification." (Internal quotation marks and citation omitted.) *People v. Starks*, 2014 IL App (1st) 121169, ¶ 85 (Hyman, J., specially concurring). *Starks* involved three strangers who randomly witnessed a shooting. The reviewing court nevertheless found the identifications reliable. Here, by contrast, the police intentionally set up a controlled drug buy, presumably to identify and prosecute the seller. As noted, the trial court could reasonably infer that they were paying close attention to the seller.

¶ 28 Defendant points to Trost's testimony that the police were "looking to see *** if [they] could get a better identification" and implies that their identification of defendant was necessarily insufficient. That the officers hoped to get a better identification does not undermine the identification that they did make.

¶ 29 Defendant complains generally about the failure of the police to pursue other possible evidence, such as fingerprinting the package of cocaine or following up on the ownership of the motorcycle to see if the owner had some connection with defendant. While it might have been preferable for the police to pursue these leads, we evaluate the evidence that was presented, not evidence that could have been presented but was not. A defendant will always be able to point to some additional piece of evidence the State could have presented, but this does not establish that

the evidence it did present was insufficient. Here, the trial court noted some of defendant's concerns but found the evidence sufficient. We cannot conclude that it erred in doing so.

¶ 30    In summary, most of defendant's arguments are based on sheer speculation that directly contradicts the evidence in the record. For example: (1)  both officers testified that enough light was present to identify the seller, defendant speculates that there probably was not; (2) although the officers testified that the sale was a controlled drug buy, defendant speculates that they may not have paid close attention; and (3) although Morales testified that he was able to identify the seller despite the four-month lag between the sale and the identification, defendant speculates that he may have forgotten defendant's appearance. There is simply no evidence in the record to support these contentions. And while the trial court could have drawn one or more of these conclusions, it did not. Its failure to do so was within its purview as the finder of fact. See *Slim*, 127 Ill. 2d at 307.

¶ 31    Defendant separately challenges the evidence of his confession. He contends that it was unrecorded, vague, and consisted of one or two sentences. He notes that Morales could not produce the *Miranda* waiver form. Defendant does not contend, however, that these facts rendered the evidence inadmissible. He cites no authority holding that a confession must be recorded in some way or that it contains a specified amount of detail. Therefore, these points affected only the weight given to the alleged confession. As noted, it was for the trial judge to weigh the evidence and decide what conclusions to draw from it. *Id.* In light of the positive identifications by Morales and Tucker, any alleged deficiencies in defendant's confession do not create a reasonable doubt of his guilt.

¶ 32                                    III. CONCLUSION

¶ 33    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 34  Affirmed.